| | |
|---|---|
| 61 | 257 |
| 64 | 175 |
| e64 | 178 |
| h64 | 179 |
| 61 | 257 |
| 65 | 238 |
| 61 | 257 |
| 77 | 719 |
| 61 | 257 |
| 79 | 253 |
| 79 | 257 |

## *In re* J. T. DALTON.

### No. 11,603. (59 Pac. 336.)

CONSTITUTIONAL LAW—"*Eight-Hour*" *Statute.* Chapter 114 of the Laws of 1891 (Gen. Stat. 1897, ch. 73, §§ 12–14; Gen. Stat 1899, §§ 3710–3713), being an act providing that eight hours shall constitute a day's work for all laborers, workmen, mechanics and other persons employed by or on behalf of the state of Kansas, or by or on behalf of any county, city, township or other municipality in the state, etc., is a direction of the state to its agents, and is constitutional and valid.

Original proceeding in *habeas corpus.* Opinion filed December 9, 1899. Petitioner remanded.

### STATEMENT.

THE petitioner, J. T. Dalton, complains that he is unlawfully restrained of his liberty by the sheriff of

17—61 KAN.

Geary county, alleging that he is held in custody under a warrant issued by a justice of the peace in which he is charged with a violation of chapter 114, Laws of 1891. (Gen. Stat. 1897, ch. 73, §§ 12–14; Gen. Stat. 1899, §§ 3710–3713.)   The return of the sheriff to the writ sets out the complaint which was filed with the magistrate and upon which said warrant was issued. The first count was as follows:

"That at the county of Geary in the state of Kansas, on the 3d day of October, A. D. 1899, J. C. Zeigler and J. T. Dalton, being then and there contractors with the board of county commissioners of the county of Geary in the state of Kansas, who had entered into a contract with said board by which they had contracted and agreed for a certain consideration to do or cause to be done all the labor, and to furnish all the materials for the construction of a certain public building, to wit, a county court-house and jail, for and within said county, which contract was in full force and effect, and having hired C. W. Peterson to perform for them as such contractors certain labor in the construction of said buildings, to wit, the labor of laying stone as a stone-mason, did then and there, knowingly, wilfully and unlawfully permit and require the said C. W. Peterson to work, as aforesaid, more than eight hours, to wit, ten hours, on said calendar day, at and upon said labor of laying stone as a stone-mason, there being then and there no extraordinary emergency arising in time of war, nor any necessity for said C. W. Peterson, or any others engaged on or about said work, to work more than eight hours for the protection of property or of human life, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

The second count, after alleging that Zeigler and Dalton had entered into a contract with the board of county commissioners for the performing of all labor and the furnishing of all material for the construction

of the court-house and jail, set out that Zeigler and Dalton agreed with John Devine "to perform or cause to be performed for them, as such contractors, certain labor, to wit, the labor of the hauling from the quarry to said buildings stone to be used in said buildings at a certain price per perch," and did "knowingly, wilfully and unlawfully connive at, encourage and permit the said John Devine to require and permit James Walker and other laborers by him, the said John Devine, hired and employed in and about said work of so hauling said stone, to work more than eight hours  .  .  .  on said calendar day, there being no emergency," etc.

The third count charged that Zeigler and Dalton employed one John Devine to haul from the quarry to the building stone to be used therein, said Devine to receive for his wages a certain price per perch for the stone so hauled, and did permit him to labor at the work "more than eight hours, to wit, ten hours on a calendar day, there being no extraordinary emergency or necessity," etc.

The fourth count alleged that said Zeigler and Dalton, having employed C. W. Peterson to perform the labor of laying stone as a stone-mason on said building, and having agreed to pay him wages at the sum of thirty cents per hour, did unlawfully permit said Peterson to labor at said work "more than eight hours, to wit, ten hours on a calendar day, there being no extraordinary emergency," etc.

The fifth count charged that Zeigler and Dalton hired and employed one Peterson to perform the labor of laying stone as a stone-mason, and did unlawfully hire said Peterson to labor on the basis of ten hours as constituting a day's work by contracting to pay him a certain sum, to wit, thirty cents per hour and no

more, the current rate of wages for said work being then and there, in that locality, the sum of three dollars per day ; and did unlawfully exact and require of Peterson that he should work ten hours each calendar day in order to be entitled to or be paid said current wage of three dollars per day.

The statute under which the petitioner is prosecuted reads :

"AN ACT constituting eight hours a day's work for all laborers, workmen, mechanics and other persons employed by or on behalf of the state of Kansas, or by or on behalf of any county, city, township or other municipality in said state, or by contractors or others doing work or furnishing material for the state of Kansas, or any county, city, township, or other municipality thereof, and providing penalties for violation of the provisions of this act.

"*Be it enacted by the Legislature of the State of Kansas:*

" SECTION 1. That eight hours shall constitute a day's work for all laborers, workmen, mechanics or other persons now employed, or who may hereafter be employed by or on behalf of the state of Kansas, or by or on behalf of any county, city, township, or other municipality of said state, except in cases of extraordinary emergency which may arise in time of war or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life : *Provided,* that in all such cases the laborer, workmen, mechanics or other persons so employed and working to exceed eight hours per calendar day shall be paid on the basis of eight hours constituting a day's work : *Provided further,* that not less than the current rate of per diem wages in the locality were the work is performed shall be paid to laborers, workmen, mechanics and other persons so employed by or on behalf of the state of Kansas, or any county, city, township or other municipality of said state ; and laborers, workmen, mechanics and other persons employed by contractors or sub-contractors in the execution of any contract or contracts within the state of Kansas, or within any county, city, township, or other municipality thereof, shall be deemed to be employed by or on behalf of the

*In re* Dalton.

state of Kansas, or of such county, city, township, or other municipality thereof.

"SEC. 2. That all contracts hereafter made by and on behalf of the state of Kansas, or by or on behalf of any county, city, township, or other municipality of said state, with any corporation, person or persons, for the performance of any work or the furnishing of any material manufactured within the state of Kansas, shall be deemed and considered as made upon the basis of eight hours constituting a day's work; and it shall be unlawful for any such corporation, person or persons to require or permit any laborer, workman, mechanic or other person to work more than eight hours per calendar day in doing such work, or in furnishing or manufacturing such material, except in the cases and upon the conditions provided in section 1 of this act.

"SEC. 3. That any officer of the state of Kansas, or of any county, city, township or municipality of said state, or any person acting under or for such officer, or any contractor with the state of Kansas, or any county, city, township or other municipality thereof, or other person violating any of the provisions of this act, shall for each offense be punished by a fine of not less than $50 nor more than $1000, or by imprisonment not more than six months, or both fine and imprisonment, in the discretion of the court.

"SEC. 4. This act shall not apply to existing contracts."

*J. R. McClure*, for petitioner.

*A. A. Godard*, attorney-general, and *G. C. Clemens*, for respondent.

The opinion of the court was delivered by

SMITH, J.: The law for a violation of which the petitioner is prosecuted is to be regarded as a direction by a principal to his agent — a matter of concern to the principal and agent alone. The state declares by this statute that all laborers, workmen or mechan-

ics engaged in its service shall not work thereunder .more than eight hours per day ; that it will make no contracts for longer hours. A by-law of a corporation might provide that none of its agents should employ persons to labor in its behalf more than eight hours in any one day. Such by-law would be a matter of private concern between the corporation and the person who sought employment by it. Here the state has seen fit to declare (and for what reason it is unnecessary to inquire) that eight hours shall constitute a day's work for all persons employed by it or by any of its political subdivisions. A contractor, in bidding for work to be done by the state, county, city, or township, understands, in making his estimates, that under the law eight hours per day is the maximum time which his employees may work. He is nowise prejudiced, for all other bidders for the same work have equal knowledge of the rule which the state has established governing the hours of labor to be performed in its behalf. The position which the state has taken nowise differs from that of an individual who, in the employment of labor, refuses to permit his employees to labor more than eight hours. It is certainly lawful for one to refuse to employ men to work more than a given number of hours per day. In the case of *United States v. Martin*, 94 U. S. 400, 404, 24 L. Ed. 128, in passing on an act of congress declaring that eight hours shall constitute a day's work for laborers, workmen or mechanics employed by or on behalf of the government of the United States, the court said :

" We regard the statute chiefly as in the nature of a direction from a principal to his agent, that eight hours is deemed to be a proper length of time for a day's labor, and that his contracts shall be based upon that theory. It is a matter between the princi-

pal and his agent, in which a third party has no interest.''

In *People v. Beck*, 30 N. Y. Supp. 473, the superior court at Buffalo, in passing on an ordinance of that city forbidding contractors for public improvements to accept more than eight hours for a day's work, except in cases of necessity, said :

'' If the government has the power of determination in this regard, then it must follow that it has also the power to make its determination effective, and provide by penalty the enforcement of the law.   This is the ordinary and frequent exercise of governmental power. . . .   Does this in anywise interfere with the laborer?   Is his right above the conceded power of government in this respect?   His right is the right to offer his labor in the market equally with every other laborer of his class, and no more.   If he offer it to the government, he knows what terms the government has prescribed ; and if he is not willing to accede to its terms, he may not be compelled thereto. But where does the power reside, or did it ever reside, in the law, which will compel the government *to* change its terms to compliance with what the laborer demands?   His right is presently, at the place where he offers his labor, but it is subject to the rights of the party, at the same time and place, to whom the labor is offered.''

We see in this law no infringement of constitutional rights.   There can be no compulsion of a contractor to bid on public work, nor is the laborer bound to take employment from a person having such contract.   If the terms relating to the hours of labor do not suit either the contractor or the employee, there is no compulsion on either the one or the other to take the contract or to perform any labor for the state.   The terms of employment are by this statute publicly proclaimed, and if a person insists upon working more than eight hours a day he must seek other employment.   His

liberty of choice is not interfered with, nor his right to labor infringed. (*People v. Warren*, 28 N. Y. Supp. 303.)

Whatever orders the state may give directly to its own agents, it may require of its political subdivisions —instrumentalities of said government, such as counties, cities, and townships. These subdivisions are merely involuntary political or civil divisions of the state, created by statute to aid in the administration of government.

"A county is one of the civil divisions of a country for judicial and political purposes, created by the sovereign power of the state of its own will, without the particular solicitation, consent, or concurrent action of the people who inhabit it ; a local organization which, for the purpose of civil administration, is invested with certain functions of corporate existence. (7 A. & E. Encyl. of L., 2d ed., 900.) See *The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431 ; *Pfefferle v. Comm'rs of Lyon Co.*, 39 id. 432, 18 Pac. 506 ; *Askew v. Hale County*, 54 Ala. 639.

It has been held competent for the legislature to establish a state road and cast the cost and expense thereof upon the county in which the road lies, without the consent of the officers or people of the county. And in like manner it may require the county to build a certain kind or number of bridges at specified places, another county to build·roads in a particular locality, and another to build public buildings ; and for this and other public purposes the counties, or other municipalities, could be required to levy a tax and make other provisions for the payment of such improvements. (*The State, ex rel., v. Comm'rs of Shawnee Co.*, supra ; *The State v. Freeman*, ante, p. 90, 58 Pac. 959.) Indeed, everything relating to the management of counties, cities and townships not defined and

limited by the constitution may be taken away by the state acting through its legislature, and as to these political divisions and their agents the legislature has the same power that it possesses over state officers.

We conclude, therefore, that the statute under consideration is a mere direction of the state to its agents and a proper exercise of its power in that respect.

The writ will be denied and the petitioner remanded to the custody of the sheriff.