192 So. 274

## MORGAN COUNTY et al. v. EDMONSON.

### 8 Div. 8.

Supreme Court of Alabama.

Nov. 23, 1939.

Julian Harris and Norman W. Harris, both of Decatur, for appellants.

Melvin Hutson, of Decatur, for appellee.

S. A. Lynne, of Decatur, for T. C. Almon, as Probate Judge.

GARDNER, Justice.

On March 9, 1939, there was approved a local act establishing a Board of Revenue and Control of Morgan County, Alabama, repealing all laws in conflict therewith, with specific reference to the Act approved September 29, 1919, found in Local Acts 1919, page 258.

In this proceeding the constitutionality of the Act of March 9, 1939, is assailed upon grounds to be noted. First, it is insisted that it is violative of section 105 of our Constitution, in that the provisions of the law are such as are provided for by the general laws of the State relating to commissioners' courts for the several counties. Sections 6748 et seq., Michie's Code of 1928.

Speaking to this provision of our Constitution as applicable to local legislation, we observed in State ex rel. Day v. Bowles, 217 Ala. 458, 116 So. 662, 664:

"Sufficient to say now, it is settled, we think, by our decisions, that this section does not withdraw the legislative discretion to prescribe or change the governing agencies of counties by local legislation suited to the varied needs of counties of widely different conditions as to population, wealth and local requirements.

"Such legislation need not be based upon enlargement or curtailment of governmental functions. General laws may already meet all the demands in that regard, and

agencies may be provided by general law; yet, if a substantial object of the local law is to abolish one agency and invest its functions in another, to consolidate agencies, to provide additional ones to take over and reduce the labors of existing agencies or to create new ones deemed to be better fitted to exercise in whole or in part functions theretofore committed to an existing agency, such local act is not within the inhibition of section 105 of the Constitution."

Numerous authorities are cited, among them Dunn v. Dean, 196 Ala. 486, 71 So. 709, perhaps here more nearly in point, and which fully sustains the view the Act in question does not offend section 105 of the Constitution. And to like effect is State ex rel. Brandon v. Prince et al., 199 Ala. 444, 74 So. 939. See, also, Talley v. Webster, 225 Ala. 384, 143 So. 555; Polytinsky v. Wilhite, 211 Ala. 94, 99 So. 843, 844. And in the Polytinsky case the Court observed: "Section 105, as repeatedly held by this court, does not inhibit local legislation on subjects not enumerated in section 104, where the object of the local law is to accomplish an end not substantially provided for and effectuated by a general law, notwithstanding there is a general law dealing with the subject or system affected by the local law."

The differences existing between this Act and the general law concerning commissioners' courts need no detail statement here. They may be noted in a general way only. Under the general law the commissioners are elected from the county at large, while the act here considered divides the county into four districts, one member of the board to be elected from each district by the voters of that district, and their terms of office are based upon the stagger system rather than the concurrent terms provided by the general law.

The newly established board has a full time chairman rather than having the judge of probate as chairman of the board as provided in the general law. The meetings of the board are twice monthly rather than once quarterly. Inventories are required to be filed annually by each member of the board, wage and rental scales are fixed, and various and sundry reports as to repairs and purchases are required. The chairman of the board serves as auditor and keeps the books and required records and performs numerous other duties not here necessary to enumerate. It

is important also to note that the chairman and each member of the board are required to devote their entire time to the duties of the office; and among other numerous duties enumerated for the members of the board is that of supervision of all public roads in their respective districts, with a duty to "supervise, inspect and superintend all work done on the public roads within his district, to appoint overseers and cause all road hands and work to be apportioned to the several roads within his district."

Some of the changes above noted were embraced in the Local Act of 1919. But that Act is expressly repealed, and we are not here concerned therewith in a consideration of section 105 of the Constitution.

We are here interested in the distinguishing features of the Act of 1939 and the general law relating to the commissioners' court. We have heretofore observed that mere changes in the terms or wording between a local and general law, or any other unessential change showing an attempt to evade or avoid the Constitution will not save such local law from condemnation by the courts. State ex rel. Brandon v. Prince et al., supra.

It is of course a well settled rule that in determining the validity of an enactment, the judiciary will not inquire into the motives or reasons of the legislature or the members thereof. 16 Corpus Juris Secundum, Constitutional Law, § 154, p. 487. "The judicial department cannot control legislative discretion, nor inquire into the motives of legislators." City of Birmingham v. Henry, 224 Ala. 239, 139 So. 283. See, also, State ex rel. Russum v. Jefferson County Commission, 224 Ala. 229, 139 So. 243; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092. But if the act upon its face, and considered in all its phases, appears to the judicial mind to be a mere "colorable pretext" it will be stricken as an evasion of the Constitution. Such was the holding in Carnley v. Moore, 218 Ala. 274, 118 So. 409.

But the Act considered in the Carnley case, supra, was materially different from the one here in question. There it was pointed out the general duties of members of the commissioners' court were the same, and that in effect the only substantial change related to the method of election by districts with the "stagger system" and the commissioners' compensation. The same commissioners were continued in of-

fice, the court of county commissioners was not abolished, but continued to function as theretofore, but with an increase in per diem pay. And the conclusion was that the Act disclosed upon its face it was "a mere effort or colorable pretext to increase the compensation of the county commissioners."

■ Indeed, so far as section 105 of the Constitution is concerned, the learned chancellor, as we understand his opinion, which appears in the record, concluded that under the authority of Dunn v. Dean, supra, the Act could not be stricken down as in violation of this provision of the Constitution. But the conclusion reached that the Act was violative of sections 68, 96 and subdivision 24 of section 104 of the Constitution, was rested upon the theory that the increased duties imposed were germane to the office and not foreign thereto, with citation of cases from other jurisdictions, as found in 21 A.L.R. 256, and of Tayloe v. Davis, 212 Ala. 282, 102 So. 433, 40 A.L.R. 1052, a distinction not heretofore considered by this Court. State ex rel. Brandon v. Prince et al., supra; Jackson v. Sherrod, 207 Ala. 245, 92 So. 481; McElderry v. Abercrombie, 213 Ala. 289, 104 So. 671; Dunn v. Dean, supra; State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278; and Moon v. Thompson, ante, p. 356, 191 So. 211.

But the exigencies of this case call for no consideration of this question. This for the reason that, in our opinion, these constitutional provisions are here inapplicable. This is not an Act merely adding new and additional duties to presently existing incumbents in office. In Carnley v. Moore, supra, upon which much reliance is had, the conclusion was, as we have previously observed, that the act then considered was but a colorable pretext for the purpose of increasing the compensation of the officers, and of consequence it was stricken down. But such is not the case before us. As to sections 96 and 104(24) of our Constitution, they cover in this respect much the same, if not identical, ground. Jackson v. Sherrod, supra. The purpose was to secure uniformity throughout the State as to costs and charges of court, fees, commissions, percentages and allowances of public officers. Like charges for like service rendered. Jackson v. Sherrod, supra; Vaughan v. State ex rel. Barker, 212 Ala. 461, 103 So. 38; Henry v. State ex rel. Hartsfield, 218 Ala. 71, 117 So. 626.

■ As to section 96, we have observed that it is limited to "'public officers' common to" all the counties in the State. And it is further stated (State ex rel. Ward v. Henry, supra [224 Ala. 224, 139 So. 282]) that "it was never intended to fix a static and rigid county organization. It does not prevent the creation of new offices to meet the needs of a county or class of counties growing out of increased population, and the fixing of their compensation." And much must be left to legislative discretion as to the needs and requirements in this respect, and each act must of course stand upon its own bottom.

■ As to these provisions of our Constitution, the observation of this Court with reference to section 105, Constitution, in State ex rel. Day v. Bowles, supra, is equally applicable, that is, they do "not withdraw the legislative discretion to prescribe or change the governing agencies of counties by local legislation suited to the varied needs of counties of widely different conditions as to population, wealth and local requirements."

■ The people of Morgan County, through their chosen representatives in the lawmaking body, have expressed a need for a change in their county organization. All intendments must be resolved in favor of the validity of this enactment to that end. Good faith must be presumed. Acting upon this premise, therefore, the Act, upon its face, evinces a requirement for a substantial change in the matter of county organization. And if Morgan County, by reason of its growth in population, or wealth, or increase in business affairs, sees fit to, in good faith, withdraw from the old system of county government, as evidenced by the general law relating to county commissions, with general duties and a per diem compensation, and a selection of its commissioners by the electorate of the entire county, and establish a radically new system, we are unable to find any constitutional inhibition to that end.

The Act here assailed does establish an entirely new system, and is radically different from the old. Not only is greater responsibility placed upon each member of the new board as to county affairs, especially in regard to his particular district, but full time service is required. The judge of probate is no longer chairman, but a chairman is selected, who likewise must devote his full time to the county's affairs.

Upon what process of reasoning are the courts to say that this new system is but a "colorable pretext" and a sham? The Act evinces a local need for this new agency, and that the affairs of the county call for a radical change. And the new system is therefore validly established, unless it be said that the provisions of our Constitution, herein noted, demand a "static and rigid county organization," a thought rejected by this Court in State ex rel. Ward v. Henry, supra.

Nor do the provisions of sections 68 and 281 of our Constitution stand in the way of the validity of the Act. These sections presuppose the existence of an office at the time of the change in the matter of compensation of the incumbent, and its continued existence. Of course, as previously observed, and as held in Carnley v. Moore, supra, if the act evinces upon its face a lack of good faith, and that it is but an attempt to evade the Constitution, it must fall. But here we have said the Act upon its face in good faith establishes a new county organization, and the local Act of 1919 is expressly repealed.

True, the new act names as the four members of the new board for the four newly established districts, those persons who were duly elected members of the board created by the Act of 1919. But this fact is a mere incident. The office these members held under the local Act of 1919 has been abolished, and of consequence they could no longer be incumbents thereof. The Legislature could have named others, and the members of the abolished board could offer no just complaint. The mere fact, therefore, that these members of the abolished board were named to the new does not suffice to bring into play either section 68 or 281 of the Constitution.

It appears that under the new system the judge of probate suffers a loss of some compensation by his elimination as chairman and the substitution of another in his stead. But this was a matter of legislative discretion, of which he cannot complain. That question was considered in State ex rel. Ward v. Henry, supra, where the Court said: "We cannot accede to the view that section 281 [Constitution] forbids a transfer of official duty from one officer to another, during the term of the former, because he would thereby be deprived of fees allowed for the performance of such duty."

We have considered the various constitutional objections urged against this Act, and find ourselves unpersuaded as to any of them.

It results, therefore, that, in our opinion, the demurrer to the bill was due to be sustained, and a decree to that effect will be here entered. The decree is reversed and one here rendered sustaining the demurrer to the bill, and remanding the cause for further disposition in accord with the views herein expressed.

Reversed, rendered and remanded.

ANDERSON, C. J., and THOMAS, BOULDIN, BROWN, and FOSTER, JJ., concur.