63 So.2d 683

**HALL et al. v. UNDERWOOD, Judge of Probate et al.**

**8 Div. 644.**

Supreme Court of Alabama.

Feb. 26, 1953.

J. Foy Guin and Jas. L. Orman, Russell-
ville, for appellant.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Rankin Fite, Hamilton of counsel, for appellees.

White, Bradley, Arant, All & Rose, Birmingham, for appellee Birmingham Trust Nat. Bank.

LIVINGSTON, Chief Justice.

This is an appeal from a decree of the Circuit Court, in Equity, of Franklin County, Alabama. The proceedings were begun by Archie B. Hall, a resident and taxpayer of Franklin County; James Hovater, E. A. Reid, Ed Mitchell and Joe Peden, as members of the county governing body of Franklin County, Alabama,

and in their individual capacity; and Franklin County, Alabama, a body corporate. The bill, as amended, makes Edgar Underwood, as Judge of Probate, and Edgar Underwood, as Chairman of the County Governing Body of Franklin County, the Citizens Bank and Savings Company of Russellville, Alabama, an Alabama Corporation, and as depository of Franklin County, Alabama, in lieu of a county treasury; the First National Bank of Russellville, Alabama, a National Banking Association; the Vina Banking Corporation, an Alabama Corporation; the Bank of Red Bay, an Alabama Corporation; the Birmingham Trust National Bank, a National Banking Association; W. G. Pruett, as Director of the Alabama Highway Department; and Si Garrett, as Attorney General of the State of Alabama, respondents. The bill as last amended was filed for the purpose of testing the constitutional validity of two local acts of the Legislature of Alabama of 1951, and the several sections or provisions thereof. The demurrers of the Birmingham Trust National Bank were sustained to the bill on the theory that as to it, the bill as amended failed to state a justiciable controversy between the complainants and said bank. The other banking institutions filed answers, which in effect admitted the allegations of the bill of complaint.

The two local acts here involved are known as the Todd Act and the Oden Act. The Todd Act appears on page 378 of the Special and Regular Sessions of the Legislature of Alabama of 1951, and the Oden Act appears on page 1288 of the same Acts.

The trial court sustained the validity of both acts with certain exceptions which we will note later, but we may say here that no appeal was taken from the rulings of the trial court declaring certain sections of the acts involved unconstitutional.

The trial court rendered a decree declaring the meaning and effect of the several sections, or provisions, of both acts. It is from this decree that the complainants in the court below prosecuted this appeal.

The Oden Act, in general effect, simply abolishes the court of county revenues of Franklin County, and establishes in lieu thereof a Board of Revenue of Franklin County; provides for who shall be members of said board, and as to how they are to be elected. This act also provides that the board of revenue shall have the same powers and jurisdiction, and shall perform the same duties which are now or may hereafter be conferred or imposed upon boards of revenue, courts of county commissioners, or other like governing bodies, by the general law of the State of Alabama; provided, however, that said board shall have no control, management, or supervision of the county roads and bridges of said county, and shall not have supervision over any road and bridge funds, and that the road and bridge fund monies shall be handled under the provisions of the Todd Act.

The Todd Act, in general effect, transfers from the governing body of Franklin County to the State Highway Department, with certain exceptions, the general powers and jurisdiction of the local governing body of Franklin County in respect to roads, bridges, and ferries, together with certain monies, equipment, etc., to be used in that regard.

All annual revenues which accrue to the benefit of Franklin County are held in three funds, or at least pass through one of such three funds before final allocation for expenditures are made.

First. The Franklin County General Fund. This fund accrues from general sources and is available for general expenses. The motor vehicle license tax, which is here involved, goes into the general fund of Franklin County. The general state law which earmarks a portion of the motor vehicle license tax for distribution to the county does not further earmark any portion of such part as is received by the counties for any particular purpose.

Second. The gasoline tax fund, which has always been held and treated as a road building and road repair fund.

The third major county fund is that derived from Section 215 of the Constitution of 1901, from the county levy of one-fourth of one per centum per annum "for the erection of necessary public buildings, bridges, or roads". By express constitutional requirement, this fund "shall be applied exclusively to the purposes for which the same were so levied and collected."

The argument is made, first, that to uphold the two local acts now in question is to, in effect, destroy Franklin County as a legal entity; that to take away from the local governing authorities all of the power and jurisdiction over roads, bridges and ferries, and transfer the same to a state agency, the State Highway Department, is tantamount to the abolition of Franklin County. The argument recognizes our line of cases justifying the legislative reconstruction of county governments, but insists that such reconstruction should be within the framework of local self-government, and that the Legislature is not authorized to transfer matters of purely local concern to state agencies located outside the county. In our opinion, this argument is fully answered by our cases. In the case of Yeilding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580, 583, the late Mr. Justice Knight quoted with approval Judge Dillon in his treatise on Municipal Corporations, 5th Edition, Section 98, page 154, as follows:

" 'Independently of any constitutional guarantee an inherent right of local self-government which is beyond legislative control has been asserted to defeat legislation depriving or tending to deprive the corporation of the control of some part of its affairs. The occasion for the assertion of the right has usually been the enactment of a statute depriving a city or other public corporation of the power to appoint an officer or board exercising local functions, and conferring the power of appointment on the executive, or mandatory legislation for a local improvement, for the incurring of debt, the issue of bonds, or the payment of a claim, or a statutory enactment prescribing the terms and conditions of contracts by the municipality. Such legislation has frequently caused the courts to consider the abstract question whether a municipality has any inherent right of local self-government which is beyond legislative interference, and much has been said in support of or against the existence of the right, which should be construed as having reference only to the question before the court on the facts of the particular case, although couched in language so sweeping as to give it general application. It must now be conceded that the great weight of authority denies in toto the existence, in the absence of special constitutional provisions, of any inherent right of local self-government which is beyond legislative control. The Supreme Court of United States has declared that a municipal corporation in the exercise of all its duties, including those most strictly local or internal, is but a department of the State. The legislature may give it all the powers such a being is capable of receiving, making it a miniature State within its locality; or it may strip it of every power, leaving it a corporation in name only; and it may create and recreate these changes as often as it chooses, or it may itself exercise directly within the locality any or all the powers usually committed to a municipality.' "

Justice Knight said further:

"In 19 R.C.L., p. 730, § 35, we find the following statement of the rule under consideration: 'The power to create a municipal corporation, which is vested in the legislature, implies the power to create it with such limitations as the legislature may see fit to impose, and to impose such limitations at any stage of its existence.'

"(4) We are in full accord with the statement of Judge Dillon in his statement of the law as above set out, * * *."

In the case of Johnson v. Robinson, 238 Ala. 568, 192 So. 412, 416, this Court said:

"It is a matter of common knowledge that the enterprise of road building has become one of Alabama's major problems; that large sums of money are gathered and appropriated to this enterprise, more now than ever before in the history of the State; that competent, governmental administrative bodies and agencies are essential to the due and economical administration of these funds, it would seem, is not open to question. What agencies shall be provided, however, is a matter of policy committed to the Legislature, and with which the courts are not concerned. State ex rel. Day v. Bowles, 217 Ala. 458, 116 So. 662; Morgan County v. N. Edmondson, supra [238 Ala. 522, 192 So. 274].

*       *       *       *       *       *

" 'It is also a maxim of republican government that local concerns shall be managed in the local districts, which shall choose their own administrative and public officers, and establish for themselves police regulations. But this maxim is subject to such exceptions as the legislative power of the State shall see fit to make, and when made it must 'be presumed' that the public interest, convenience and protection are subserved thereby. The State may interfere to establish new regulations against the will of the local constituency, and if it shall think proper in any case to assume to itself those powers of local police which should be executed by the people immediately concerned, *  *  *.' the courts must conclude that 'a regard to the general well-being has demanded the change,' and justifies the law creating it."

It was said in the case of Atkin v. Kansas, 191 U.S. 207, 24 S.Ct. 124, 127, 48 L. Ed. 148, in speaking of political subdivisions and their powers over highways:

"They may be created, or, having been created, their powers may be restricted or enlarged or altogether withdrawn at the will of the legislature; the authority of the legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed. *  *  * In the case last cited we said that 'a municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the State for conducting the affairs of government, and, as such, it is subject to the control of the legislature.' It may be observed here that the decisions 'by the supreme court of Kansas are in substantial accord with these principles. That court, in the present case, approved what was said in City of Clinton v. Cedar Rapids & Missouri River R. R. Co., 24 Iowa, 455, 475, in which the supreme court of Iowa said: 'Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the state, and the corporation could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the legislature.' . See also In re Dalton, 61 Kan. 257, 59 P. 336, 47 L.R.A. 380; State ex rel. v. Lake Koen Navigation, Reservoir & Irrigation Co., 63 Kan. 394, 65 P. 681; State ex rel. v. [Board of] Com'rs of Shawnee County, 28 Kan. 431, 433; Mayor, [etc., of] Frederick v. Groshon, 30 Md. 436, 444.

"The improvement of the boulevard in question was a work of which the state, if it had deemed it proper to do so, could have taken immediate charge by its own agents; for it is one of the functions of government to provide

public highways for the convenience and comfort of the people. Instead of undertaking that work directly, the state invested one of its governmental agencies with power to care for it. Whether done by the state directly or by one of its instrumentalities, the work was of a public, not private character."

See also Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915.

From the foregoing authorities, it seems clear to us that the Legislature has not transgressed its powers in enacting the two laws involved, unless inhibited by specific constitutional provisions. In other words, the Constitution does not prohibit, either expressly or impliedly, the Legislature transferring matters of a local character, and ordinarily handled by local agencies, to a state agency, simply because such matters are local in nature.

Before discussing specific constitutional objections to the two acts involved, it may be well to here note some rules of construction laid down in our cases when acts of the Legislature are assailed on constitutional grounds. The rule is that except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operates according to natural justice or not in the particular case, Johnson v. Robinson, supra; and that in determining the validity of an enactment, the judiciary will not inquire into the motives or reasons of the Legislature or the members thereof. The Judicial Department cannot control legislative discretion. Morgan County v. Edmonson, 238 Ala. 522, 192 So. 274. Further, a statute will be sustained as not violative of constitutional limitations on legislative powers, if with the aid of all reasonable intendments, it can be given effect without violation of the letter and spirit of the Constitution. Byrd v. State ex rel. Colquett, 212 Ala. 266, 102 So. 223. In the case of McCall v. Automatic Voting Machine Corporation, 236 Ala. 10, 180 So. 695, 697, it was said:

"We are, of course, aware of the elementary principle that, where the validity of a statute is assailed, and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it. When the constitutionality of a statute is questioned, it is the duty of the courts to adopt a construction that will bring it in harmony with the Constitution, if its language will permit, even though the construction which is adopted does not appear to be as natural as the other. State ex rel. Collman v. Pitts, Probate Judge, 160 Ala. 133, 49 So. 441, 686, 135 Am.St.Rep. 79. There are, however, limitations to the application of these principles, and the courts are not at liberty in order to sustain a statute to give it a forced construction or to read into it and interpolate words which do not appear in the language enacted by the Legislature. 6 R.C.L., p. 79, § 77."

We agree that the two local acts now in question are to be construed in pari materia. It is strenuously argued that the Todd Act violates Sections 104(15) and 105 of the Constitution of Alabama of 1901. Said Section 105 provides:

"No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."

Section 104(15) provides that the Legislature shall not pass a special, private, or local law regulating either the assessment or collection of taxes, except in connection with the readjustment, renewal, or extension of existing municipal indebtedness created prior to the ratification of the Constitution of 1875.

In the case of Polytinsky v. Wilhite, 211 Ala. 94, 99 So. 843, 844, the court observed:

"Section 105, as repeatedly held by this court, does not inhibit local legislation on subjects not enumerated in section 104, where the object of the local law is to accomplish an end not substantially provided for and effectuated by a general law, notwithstanding there is a general law dealing with the subject or system affected by the local law."

The foregoing was quoted with approval in the case of Morgan County v. Edmonson, supra. Edmonson's case is also clear authority for the proposition that Section 105 does not withdraw legislative discretion to prescribe or change the governing agencies of counties by local legislation suited to the various needs of counties of widely different conditions as to population, wealth and local requirements. It was there said [238 Ala. 522, 192 So. 275]:

" 'Such legislation need not be based upon enlargement or curtailment of governmental functions. General laws may already meet all the demands in that regard, and agencies may be provided by general law; yet, if a substantial object of the local law is to abolish one agency and invest its functions in another, to consolidate agencies, to provide additional ones to take over and reduce the labors of existing agencies or to create new ones deemed to be better fitted to exercise in whole or in part functions theretofore committed to an existing agency, such local act is not within the inhibition of section 105 of the Constitution.' "

We also quote the following from the case of Walker County v. Barnett, 247 Ala. 418, 24 So.2d 665, 667:

"And in Board of Revenue v. Kayser, 205 Ala. 289, 88 So. 19, 20, attention is called to the explanation of section 105 in the constitutional convention as follows: 'Now is there any hardship (in) saying to any man, any individual, corporation or association, that if the laws of the state have already provided for your case and you can get everything you could possibly get by appealing to the Legislature, you ought not to consume the public time in trying to get the Legislature to do what has already been done for you. That is all this provision means.'

"This is illustrated in Norwood v. Goldsmith, 168 Ala. 224, 53 So. 84, when a general law provided for the means by which taxes could be refunded by the commissioners' court. It was held that a local act making a provision for that purpose violated section 105. And in City Council of Montgomery v. Reese, 149 Ala. 188, 43 So. 116, in which the Court dealt with a local act authorizing Montgomery to refund bonded indebtedness whereas provision had been made for that purpose by a general act.

"In City Bank & Trust Co. v. State [ex rel. Langan] 172 Ala. 197, 55 So. 511, 513, it was said that the test 'is whether the proceeding or action contemplated by the local, private, or special law might have been, in substance and not in respect of detail merely, taken or had under the general law. If so, the local, private, or special act violates the section (105) and is void.'

"And in Dunn v. Dean, 196 Ala. 486, 71 So. 709, it was held that it is not void when there is no such general law. While in State ex rel. Brandon v. Prince, 199 Ala. 444, 74 So. 939, it was held that a local law providing for a board of revenue, and abolishing the jury commission and changing the method of selecting juries, is not invalid under section 105, supra, because there is a general law providing for the selection and drawing of juries. for the several counties it was observed that the Constitution did not require uniformity of laws on that subject for all the counties. This principle is also noted in Burns v. State, 246 Ala. 135, 19 So.2d 450.

"That construction of section 105, supra, is also typified in Evans v. Long, 227 Ala. 335, 149 So. 837, in which a general law made provision for the

county commissioners to fix the salary of the chief deputy sheriff in each county. Since such provision was made under a general law conferring such authority on a board outside the legislature section 105 withdrew from the legislature the power to enact a local law fixing such salary in the county of Walker."

· ▆▆ In the light of the foregoing authorities, we are of the opinion, and hold, that the Todd Act does not violate Section 105 of the Constitution.

We have carefully examined the case of State ex rel. Norwood v. Goldsmith, Treasurer, 162 Ala. 171, 50 So. 394, and McWhorter v. Lowndes County, 167 Ala. 370, 52 So. 750. They are clearly distinguishable from the instant case.

Section 4 of the Todd Act makes it the duty of "the governing body of Franklin County and all officials of the county" to pay over to the State Highway Department "all funds collected or received as taxes * * * designated or to be used for the purpose of constructing, maintaining or repairing county roads or bridges." Section 215 of the Constitution of 1901 provides, inter alia, as follows:

" * * * for the erection of necessary public buildings, bridges, or roads, (a) any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected."

· It is argued by complainants that Section 215 of the Constitution means that only the county and not the State has control of the funds raised by the county by taxation, and that the Highway Department is claiming the motor vehicle license tax and the 2½ mill ad valorem tax (a county tax), and to allow the State to control these funds would be violative of Sections 104(15) and 105 of the Constitution.

It is our conclusion that from a fair and reasonable construction of the Todd Act in its entirety, these two funds could be used for roads and bridges only if, and when, the county governing body has first designated money from these funds to be used for road and bridge purposes, and that, therefore, the Highway Department is not entitled to receive these two funds from the county, or any money from said funds, until the county governing body has designated money from these funds to be used for road and bridge purposes. That construction was placed on the Todd Act by the trial court, and with which we are in accord. So viewed, we are to the conclusion that the Todd Act does not violate Section 104(15).

Appellants also insist that the Todd Act violates Section 45 of the Constitution because:

(a) The Title is insufficient to cover the contents in that in the Title no mention is made that Franklin County's share of the gas excise tax is to be diverted and paid directly to State Highway Department.

(b) That, not included or comprehended in Title is the provision that "the State Highway Department shall pay all of the outstanding financial obligations of Franklin County which were incurred prior to Act's adoption for the construction, etc., of roads and bridges."

(c) That, not included in Title is provision that "nothing contained in Act shall be construed to relieve County of paying its debts now existing or hereafter incurred—in the event funds paid over to Highway Department are insufficient, etc."

In the case of Johnson v. Robinson, supra [238 Ala. 568, 192 So. 414], this Court stated:

" 'The constitution does not contemplate a multiplicity of titles; it contemplates but one title, and leaves the form which may be given it to legislative discretion. It may be expressed in general words, or it may be a brief statement of the subject, or it may be an index to, or an abstract of, the contents of the act. The constitution is satisfied if the act has but one general subject, and that is fairly indicated by

402

the title.' Lindsay v. United States Savings & Loan Association, supra [120 Ala. 156, 24 So. 171, 42 L.R.A. 783].

"The language of the Constitution, 'Each law shall contain but one subject, which shall be clearly expressed in its title,' contemplates that in its application the court must not only look at the title but must consider the body of 'Each law' in ascertaining the subject thereof; and if 'the title and the body of the act, construed together, show a single purpose, and relate to a single subject,' and the grant of power is germane to that subject, such act does not offend the Constitution. * * *"

■ The Todd Act title provides that the State Highway Department shall construct the roads and bridges for Franklin County, and it provides for the transfer by the county and its officials to the State Highway Department of all funds, including Franklin County's proportionate share of the State Gasoline Tax and all equipment, supplies, etc., for the construction of county roads and bridges. Regarding argument (a) above, the title itself clearly states that these particular funds are to be transferred. True, the Todd Act does provide that "the appropriate State official is authorized to pay over to it (the Highway Department), any funds or amounts to which Franklin County shall be entitled to from the proceeds of the State gasoline tax". Section 7. But we are clear to the conclusion that this provision is germane or cognate to the general subject of the act.

In regard to (b) and (c) above, the title states that certain funds, equipment, and duties are to be transferred to the State Highway Department. Certainly the provisions of the act providing for the payment of specific obligations directly connected therewith are allied to the subject expressed in the title and are germane or cognate to it. This is exemplified in the following quotation from the case of Alabama Great So. R. R. Co. v. Reed, 124 Ala. 253, 27 So. 19, 21:

"Every legislative act is presumed to be constitutional and every intendment must be indulged by the courts in favor of its validity. In determining the question here under consideration, this court said in the case of The State v. Street, 117 Ala. [203] 208, 23 So. 807: '*When the title of an act expresses but one general subject, and all its provisions are allied to the subject expressed, or,* as is usually said, germane or cognate to it, all the purposes of the limitation are satisfied. This is the real test in each particular case: When the title expresses one general subject, however broad and comprehensive the subject may be, whether the act includes provisions which can by no fair intendment be considered as having connection or relation to the subject expressed.'

"In the case of Ex parte Pollard, 40 Ala. [77] 99, it is said: 'The question must always be whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, *except by argument characterized by liberality of construction and freedom from all nice verbal criticism.*'" (Emphasis supplied.)

We conclude that the Todd Act does not violate Section 45 of the Constitution.

It is next insisted by appellants that the Todd Act impairs the obligation of existing contracts in violation of Sections 95 and 22 of the Alabama Constitution of 1901, and Article I, Section 10, of the United States Constitution, and is, therefore, unconstitutional, null and void.

As we understand the record, there are only two classes of county obligations here involved. First, gasoline tax warrants, held by some of the appellees; and, second, general obligation county bonds, held by other appellees. The general obligation county bonds are refunding road and bridge bonds, which have the full faith and credit of Franklin County pledged to their payment.

Construing the Todd Act from its four corners, we think it clear enough that it was the intent of the Legislature that the county governing body turn over to the State Highway Department only those funds designated or to be used for county road and bridge purposes. We think it further clearly appears that the motor vehicle license tax was not intended to be so used unless and until the county governing body so designated it; this, for the reason that the motor vehicle license tax is general fund money, which automatically by law goes into the general fund of the county. Title 51, Section 713 of the 1940 Code, as last amended in 1951, and the county governing body by Section 2(a) of the Todd Act is authorized to appropriate money in the same manner and to the same extent as it may presently do so by law.

Since by law the state gasoline excise tax is earmarked to be used only for road and bridge purposes, the manner of handling that fund is clear from the act itself.

The 2½ mill ad valorem tax, a county tax, levied under Section 215 of the Constitution for public buildings, roads and bridges, is a general fund tax, and the county authorities still have the right to designate to which of the three uses it shall be put. Therefore, under the Todd Act, this fund does not have to be transferred to the State Highway Department unless and until it is designated by the county governing authorities to be used for road and bridge purposes.

The pertinent provision of the Todd Act is that the:

"county officials of Franklin County shall pay over to the State Highway Department all funds collected or received as taxes, including the motor vehicle license tax allocated to the county, or otherwise by them from any source whatsoever during the preceding month which are *designated or to be* used for the purpose of constructing, maintaining or repairing county roads or bridges." (Emphasis supplied.)

And that:

"the State Highway Department shall pay all of the outstanding financial obligations of Franklin County which were incurred prior to the adoption of this Act, for the construction, maintenance or repair of county roads and bridges out of the funds to be paid over to the Highway Department under the provisions of Section 4 of this Act. Nothing contained in this Act, however, shall be construed to relieve Franklin County of the liability for paying any of its financial obligations now existing or hereafter incurred under the provisions of Section 2(b) hereof in the event the funds paid over to the State Highway Department are insufficient to do so, or to require any of the financial obligations presently existing or hereafter incurred under the provisions of Section 2(b) hereof of the county to be paid from funds of the Highway Department."

As to the gasoline tax warrants, these warrants are to be paid from certain designated funds; namely, the gasoline excise tax. The holders of these warrants will still look to the same funds for payment, and their payment can be enforced regardless of who has charge of the funds. In re Opinion of the Justices, 252 Ala. 465, 41 So.2d 761.

It was said in Isbell v. Shelby County, 235 Ala. 571, 180 So. 567, 569:

"The warrants to be issued are not to be a charge on the general credit of the county, and so expressly disclose on their face, but are payable solely from the funds which form a part of the proceeds of a state excise tax, allocated by statute to the counties for the construction and maintenance of roads and highways. They in no manner affect the general revenues of the county, nor the proceeds of any levy by the county for special county purposes under the Constitution. * * *

" * * * These instruments are not warrants of the county in the true sense, but are merely evidences of transfer and pledge of a definite fund to their payment. Their issuance amounts in effect to a sale by the coun-

ty of the anticipated revenue to be derived from the gasoline tax allocated by the state to the county for these purposes. There is no county obligation to pay, and the funds received from a sale of these instruments, denominated warrants, are in no sense a borrowing of money."

We think it clear enough that the Todd Act in no way whatever impairs the obligation of any contract as to these gasoline tax warrants.

As to the refunding bonds, above mentioned, Section 6 of the Todd Act provides, in effect, that the State Highway Department shall pay all of such outstanding bonds which were issued prior to the adoption of the Todd Act for the construction, maintenance and repair of roads and bridges out of the fund to be paid over to the Highway Department under the provisions of the act, and, further, that nothing in the Todd Act shall be construed to relieve Franklin County of the responsibility of paying said outstanding bonds in the event the funds paid over to the Highway Department are insufficient for that purpose.

It might be argued that under the Todd Act Franklin County is relieved from liability of any of its present or hereafter incurred obligations to the extent of the funds paid over by the county to the Highway Department; but we think a more reasonable construction is that it was the intention of the Legislature to place a definite responsibility on the Highway Department to pay the present specific outstanding obligations of Franklin County and those hereafter incurred under the provisions of Section 2(b), as they become due, from the funds received by the Highway Department from the county before any of said funds can be expended for any other purpose. Moreover, the Todd Act specifically provides that nothing contained in this act, however, shall be construed to relieve Franklin County of the liabilities for paying any of its financial obligations now existing or hereafter incurred under the provisions of Section 2(b) hereof in the event funds paid over to the Highway Department are insufficient to

do so. We find nothing in the Todd Act which relieves Franklin County from any financial obligation in which the full faith and credit of said county is pledged.

In our opinion, the State Highway Department is charged with the responsibility of constructing, maintaining and repairing county roads and bridges of Franklin County from the funds paid over to it pursuant to the Todd Act. The phrase "from the funds paid over to it pursuant to Section 4 of this Act" is a definite limitation upon the State Highway Department, and the State Highway Department cannot financially obligate Franklin County beyond the amount of the funds received by it under the act, after the Highway Department has first paid the obligations that it is required to pay as they become due; and the State Highway Department can expend from the Franklin County funds only such money as remains in said funds after the payment of said obligations for the purpose of constructing, maintaining, and repairing Franklin County roads. In short, we think it clear from a reading of the entire Todd Act that it was the intention of the Legislature that certain funds are to be paid by or on behalf of Franklin County to the State Highway Department, and that from all such funds, the State Highway Department is to first pay all obligations specified by the Todd Act as they become due, after which the State Highway Department is to construct, maintain and repair roads and bridges of Franklin County, but cannot obligate Franklin County beyond the extent of said funds remaining in their possession. We do not construe the Todd Act to mean, as argued by appellants, that Franklin County shall be liable for the payment of these outstanding bonds, only "in the event the funds paid over to the State Highway Department are insufficient for that purpose." In fact, Section 6 of the Todd Act provides specifically to the contrary. In part, said Section 6 reads:

"Nothing contained in this Act, however, shall be construed to relieve Franklin County of the liability for paying any of its financial obligations now existing or hereafter incurred un-

der the provisions of Section 2(b) hereof in the event the funds paid over to the State Highway Department are insufficient to do so, * * *."

■ As we view it, Franklin County's liability continues in any event. We hold. therefore, that the Todd Act does not impair the obligations of any Franklin County contract here involved.

### The Oden Act

■ It is insisted that the Oden Act violates Section 104(29), which provides that the Legislature shall not pass a local law providing for the conduct of elections. The argument is without merit. The Oden Act does not purport to make provisions "for the 'conduct of elections' ". Dunn v. Dean, 196 Ala. 486, 71 So. 709, 714; State ex rel. Brown v. Slaughter, 196 Ala. 428, 71 So. 416; In re Opinion of the Justices, 253 Ala. 111, 43 So.2d 3.

■ It is also argued that the Oden Act violates Section 281 of the Constitution in that it reduces the compensation of the Probate Judge of Franklin County during his term of office. This argument was met and fully refuted in the case of Morgan County v. Edmonson, supra, and we see no need to further elaborate on that proposition.

■ The point is also made in the bill as amended, that the Oden Act is offensive to that part of Section 190 of the Constitution which provides that all election laws shall be uniform throughout the State. In the case of Ex parte Owens, 148 Ala. 402, 42 So. 676, 677, 8 L.R.A.,N.S., 888, this Court said:

"It is next insisted that said act is violative of section 190 of our Constitution, which provides that 'the Legislature shall pass laws, not inconsistent with this Constitution, to regulate and govern elections, and all such laws shall be uniform throughout the state, and shall provide by law for the manner of holding elections and of ascertaining the result of the same.' This provision has reference particularly to the general election laws of the state; but, conceding that it applies to laws providing for elections in the various counties, this law makes provision for all of the counties according to their several needs, and in providing for so many counties, differently situated, it is necessary that they be classified according to their several needs and conditions. It would be manifestly unjust to provide for an election on the same terms and conditions in a county which had just paid large sums of money and assumed heavy obligations to build a courthouse and jail, as in a new county which had neither. This principle of classification has been so often recognized as not impinging upon the principle of the uniformity of laws that it is unnecessary to discuss it at length. This act is not violative of section 190 of our Constitution. Harwood v. Wentworth, 162 U.S. 547, 16 S.Ct. 890, 40 L.Ed. 1069; Bone v. State, 86 Ga. 108, 12 S.E. 205; People [ex rel. Meyer] v. Haselwood, 116 Ill. 319, 6 N.E. 480; Bronson v. Oberlin, 41 Ohio St. 476, 52 Am.Rep. 90; People [ex rel. Daniels] v. Henshaw, 76 Cal. 436, 18 P. 413."

From the foregoing, it seems clear that the Oden Act is not offensive to that part of Section 190 of the Constitution mentioned above.

The Oden Act provides, inter alia, that:

"One of said members shall be nominated in the primary held prior to the November general election by the qualified electors of each of the four commissioners districts of Franklin County as they are now constituted. Such members so nominated shall be qualified electors of Franklin County, and shall be electors of and reside in the district from which he or she is nominated."

The trial court by its decree struck down that part of the Oden Act quoted last above, for the reason that it attempts to make primary elections compulsory and is violative of Section 190 of the Constitution, which provides that the Legislature "shall not make primary elections compulsory." Appellees did not assign cross

errors and that portion of the lower court's decree is not before us for review.

It is our opinion, and we hold, that the striking down of this provision of the Oden Act does not render the entire act unconstitutional in view of the severability clause in the Oden Act. The rule is that if the invalid section may be stricken from the act, leaving a statute complete within itself, sensible and capable of being executed, the striking of the invalid section does not overthrow the entire act. Dunn v. Dean, supra.

This cause was submitted in the court below and to this Court on appeal prior to November 4, 1952. We judicially know that on November 4, 1952, by a vote of the people and proclamation of the Governor, the Constitution of Alabama of 1901 was amended, so as to affect the motor vehicle license tax involved in this opinion. Therefore, what we have said with reference to the motor vehicle license tax applies to the status as it existed prior to the adoption of the amendment. See Special and Regular Sessions of the Legislature of 1951, page 1305.

We think that we have fully treated all of the questions raised and argued on this appeal. We find no error to reverse in the decree of the court below, and the same stands affirmed.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.