COOK, Justice
(dissenting).
I respectfully dissent. The substantive issue presented concerns the meaning of Ala. Const.1901, amend. 328, § 6.13, which states: “All judges shall be elected by vote of the electors within the territorial jurisdiction of their respective courts.” (Emphasis added.) More specifically, this issue involves the extent of political integrity of “what is commonly known as the Bessemer Cutoff, a territorial subdivision of Jefferson County.” State v. Hammonds, 281 Ala. 701, 702, 208 So.2d 81, 83 (1968). The majority holds that “the circuit judge for Place No. 5 is to be elected by the voters of the Tenth Judicial Circuit.” 689 So.2d at 18. In other words, it holds that Jefferson County is not comprised of separate judicial election districts. I disagree with this holding because it ignores, among other things, the realities of past and present Alabama polities and the historical context in which § 6.13 was ratified.
At the outset, I find puzzling the majority’s criticism of the appellants for not “presenting] [any] statute that would authorize” a separate judicial election district, 689 So.2d at 18 (emphasis added). The majority fails to explain why the appellants are not entitled to rely on the authority granted by the Constitution of Alabama. It hardly bears repeating here that a statute cannot alter or derogate from a constitutional provision. It does bear repeating, however, that “[legislative inaction [is] a ‘weak reed upon which to lean’ and a ‘poor beacon to follow,’ ” 2A Sutherland Stat. Constr. § 49.10 (4th ed.)(emphasis added), and that legislative silence as to practice and procedure after the ratification of a constitutional amendment that, of itself, regulates that practice and procedure is particularly nonprobative.
Amendment 328, § 6.13, which was ratified in 1973, superseded Ala. Const.1901, § 152. Section 152 provided:
“The chief justice and associate justices of the supreme court, judges of the circuit courts, judges of probate courts, and chancellors shall be elected by the qualified electors of the state, circuits, counties and chancery divisions, for which such courts may be established, at such times as may be prescribed by law, except as herein otherwise provided.”
(Emphasis added.) Section 152 differed from § 6.13 in one crucial respect, that is, it specifically described the relevant judicial election districts, namely, as circuits and counties. Section' 152 thus appears to have anticipated county-ivide elections in the Tenth Judicial Circuit.
However, in 1935, the legislator adopted Act No. 343, 1935 Loe. Ala. Acts 208, which provided:
“That candidates in primary elections for nomination for circuit judgeships in the Tenth Judicial Circuit of Alabama shall run and shall be placed upon the ballots in such primary elections only in those precincts in and over which the judgeship for which nomination is sought has jurisdiction; that is to say, candidates for nomination in such primary elections for judge-ships Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, and 11 of the Tenth Judicial Circuit of Alabama shall run and shall be placed upon the ballots used in such primaries only in those precincts which are within the jurisdiction of said Circuit court holding at Birmingham, Alabama; and candidates for nomination for judgeship No. 5 of said Circuit shall run and be placed upon ballots used in such primaries only in those precincts within the jurisdiction of the Bessemer Division of said Circuit Count.
(Emphasis added.)
The effect of the 1935 legislation is particularly significant in light of Alabama’s history as a “one-party” state. See V. Key, Southern Politics (1949). More specifically, when partisan opposition in the general election was essentially nonexistent, the primary election represented the only true test of a candi *21 date’s strength. Traditionally, therefore, Jefferson County voters expected that the judicial candidates of their choice in the primary elections would, ipso facto, win the general election. In effect, this procedure allowed the Bessemer Cutoff division and Birmingham division judges, although on the ballot county wide in the general election, to be elected from the respective division in which they served.
To be sure, the procedure proposed by the appellants involves the general election. However, to equate the phrase, “territorial jurisdiction of their respective courts,” § 6.13, with the phrase, “those precincts within the jurisdiction of the Bessemer Division,” Act No. 343 — in a real sense — merely continues the practice to which Jefferson County voters have long been accustomed.
Moreover, this Court has, at least for some purposes, already construed Act No. 213, 1919 Ala. Loc. Acts 62, amended by Act No. 362, 1935 Ala. Loc. Acts 216, amended, Act No. 199, 1943 Ala. Loc. Acts 105 (“the Act”), which divided the Tenth Judicial Circuit, as “‘in effect creat[ing] two circuit courts in one county.’ ” Glenn v. Wilson, 455 So.2d 2, 3 (Ala.1984) (emphasis added). More specifically, Glenn held that “suits ‘arising in’ the geographical boundaries of the Bessemer Cutoff but filed in Birmingham (or vice ver-sa, suits ‘arising in’ the Birmingham Division but filed in Bessemer) are subject to transfer to the proper division.” Id. at 4 (emphasis added). In other words, absent a waiver of venue by the parties, judges in the Bessemer Cutoff division have no authority to adjudicate causes of action arising in the Birmingham division and vice versa. As a result, Bessemer Cutoff division judges can serve residents of the Birmingham division, and vice versa, only if the cause of action arises in the Bessemer Cutoff area or the Birmingham resident waives her “claim for transfer based on ... improper filing.”[1] Id. See also United Supply Co. v. Hinton Constr. & Development, Inc., 396 So.2d 1047, 1050 (Ala. 1981). See also General Motors Corp. v. Hopper, 681 So.2d 1373 (Ala.1996), in which we said: “The Tenth Judicial Circuit ... is divided into two independent divisions, the ‘Bessemer Division’ and the ‘Birmingham Division.’ The Birmingham Division essentially operates as a judicial circuit separate from the Bessemer Division-” 681 So.2d at 1373. (Emphasis added.) To me, the phrase “territorial jurisdiction of their respective courts” clearly creates separate judicial election districts within the Tenth Judicial Circuit.
Indeed, the “word ‘territory,’ as generally used, describes a jurisdiction, — a district of country.” United States v. The Danube, 55 F. 993, 995 (D.Ore.1893) (emphasis added). Thus, “ ‘[t]he tract of land or district within which a judge or magistrate has jurisdiction is called his territory, and his power in relation to his territory is called his territorial jurisdiction.’” Phillips v. Thralls, 26 Kan. 780, 781 (1882) (emphasis added).
Additionally, the term “territory” is broader and more flexible than the terms “circuits” and “counties” used before the ratification of § 6.13. It is not synonymous with “county” or “circuit.” It may, in fact, encompass a geographical area comprised of several states, as in a “sales territory.” See Cabnetware, Inc. v. Birmingham Saw Works, Inc., 614 So.2d 1034, 1035 (Ala.1993) (geographical sales area was a “five-state territory”). Or, it may only encompass a “geographical area coterminous with the boundaries of a municipality.” Ala.Code 1975, § 39-7-1. In short, the term used in § 6.13 to describe judicial election districts signifies, in ordinary parlance, the geographical area subject to the jurisdiction of the judge seeking election.
To me, therefore, and, I believe, to the voters of Jefferson County, the phrase “territorial jurisdiction of their respective courts” recognizes separate judicial election districts within the Tenth Judicial Circuit. In signifying that the judges of the respective divisions are to be elected only by the residents of the geographical area they serve, § 6.13 is fully consistent with Jefferson County voters’ long expectations that the true strength of judicial candidates for Place No. 5 would be tested only in the precincts within the area served by the circuit court of the Bessemer Cutoff *22 division. By contrast, the rule adopted in this ease by the majority, pursuant to which a Bessemer Cutoff judgeship will be filled by electors the judge is not permitted to sene except under the circumstances described above, is, in fact, inconsistent with the concept of a representative democracy.
For the contrary view, the majority relies on the deposition testimony of Professor Charles D. Cole, who participated in a study and process that eventually produced Amendment 328. This reliance is misplaced. It has long been the rule in this state and elsewhere that the mental operations, intentions, and motives of individual legislators or drafters — expressed post-enactment and ad litem — are entitled to no weight or consideration by courts in construing statutes. James v. Todd, 267 Ala. 495, 506, 103 So.2d 19, 28 (1958), appeal denied 358 U.S. 206, 79 S.Ct. 288, 3 L.Ed.2d 235 (1958); Morgan County v. Edmonson, 238 Ala. 522, 525, 192 So. 274, 276 (1939); see also 2A Sutherland Stat. Constr. § 45.03 (4th ed.).
James, for example, involved a declaratory judgment action commenced to challenge to the constitutionality of a statute regulating the shipment of “milk and milk products” into Alabama. 267 Ala. at 500, 103 So.2d at 22. At trial, the parties challenging the act’s constitutionality sought to introduce testimony by members of the Alabama “Legislature to show the intent and history of the legislation, the circumstances surrounding its adoption and the evil thereby sought to be remedied.” Id. The trial court held the testimony inadmissible. Id.
On appeal, this Court agreed with the trial judge as to the inadmissibility of the testimony. 267 Ala. at 506, 103 So.2d at 28. It explained:
“The following from Wiseman v. Madison Cadillac Co., 191 Ark. 1021, 88 S.W.2d 1007, 1009, 103 A.L.R. 1208, is applicable:
“ ‘The appellee introduced Senator E.B. Dillon, a member of the Fiftieth General Assembly, who testified with reference to holding meetings and what the purpose of the amendment was, and testified at length about the passage of the bill through the Senate. He testified about his understanding of the intention of the Legislature and the intention of the committee in adopting section 15 as it now appears in the act.
‘“The court held that the evidence offered was incompetent and therefore did not consider it....
“ ‘The chancery court was correct in holding the evidence introduced by ap-pellee incompetent.
“ ‘The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act. So in ascertaining the meaning of a statute the court will not be governed or influenced by the views or opinions of any or all of the members of the Legislature, or its legislative committees or any other person.’
“See 2 Sutherland, Statutory Construction, § 5011, 3d Ed.; 82 C.J.S. Statutes § 354, p. 745.”
267 Ala. at 506, 103 So.2d at 28 (emphasis added).
This rule is not to be confused with the one allowing consideration of legislative history that is contemporaneous with “the process of enactment, from [a bill’s] introduction in the legislature to its final validation.” 2A Sutherland Stat. Constr. § 48.04 (4th ed.). “The contemporary history of events during this period consists chiefly in statements by various parties concerning the nature and effect of the proposed law and statements or other evidence on the evils to be remedied.” Id. Consideration of this species of evidence “has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act.” Id.
For these reasons, I conclude that § 6.13 mandates that the principles expressed in Act No. 343 be applied to the general elections of judicial candidates in the Tenth Circuit, and that the legislature’s disinclination to follow § 6.13 with a statute so stating should be interpreted as support for the view *23 that such legislation is unnecessary, indeed, futile. Because I believe that § 6.13 as applied to Jefferson County requires the election of judges from the respective territorial division in which they serve, I respectfully dissent from the majority opinion’s construetion of § 6.13.
SHORES, J., concurs.

. Also, where real estate is the subject of the controversy, the action must be brought in, or transferred to, the division in which the property is located. 455 So.2d at 4.