179 So.2d 714

**Dezso John LOKOS**

**v.**

**STATE of Alabama.**

**2 Div. 463.**

Supreme Court of Alabama.

Sept. 30, 1965.

Rehearing Denied Nov. 18, 1965.

<hr />

John W. Drinkard, Linden, for appellant.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The appellant, Dezso John Lokos was indicted for murder in the first degree by a grand jury of Sumter County on February 11, 1964. He was unable to employ counsel, so prior to arraignment the trial court, under the provisions of § 318, Title 15, Code 1940, appointed an experienced member of the Marengo County Bar to represent him.

Upon arraignment, Lokos pleaded not guilty and not guilty by reason of insanity. The court-appointed attorney was present at arraignment. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114.

There was a verdict of guilty of murder in the first degree and imposition of the death penalty. Judgment and sentence were in accord with the verdict.

The appeal here is under the automatic appeal law applicable to cases where the death sentence is imposed. Act 249, approved June 24, 1943, General Acts 1943, p. 217, carried in the 1955 Cum. Pocket Part to Vol. IV, 1940 Official Code, and in the 1958 Recompiled Code as Title 15, § 382(1) et seq.

The attorney who represented Lokos in the trial court was appointed to represent him on this appeal and he has filed a brief on behalf of Lokos in this court.

On February 14, 1964, the day of arraignment, counsel for appellant filed two motions on his behalf, a motion for a change of venue and a motion for the appointment of specialists to examine appellant concerning his mental condition. Each of these motions was overruled by the court prior to trial of the main case.

When the motion for change of venue came on for hearing on February

20, 1964, the appellant called several witnesses but all of them gave testimony to the effect that in their opinion the appellant could secure a fair and impartial trial in Sumter County, and the State called a number of witnesses who testified to the same effect. Reversible error is not made to appear in the action of the trial court in overruling the motion for a change of venue. Campbell v. State, 257 Ala. 322, 58 So.2d 623, and cases cited; Denton v. State, 263 Ala. 311, 82 So.2d 406.

On February 14, 1964, the day on which counsel for the appellant moved the trial court to appoint "three reputable specialist practitioners, to examine 'into' the appellant's 'mental and nervous condition' ", the trial court refused to pass on the motion but set it down for a hearing on February 20, 1964. Counsel for appellant by the aforementioned motion sought to invoke the authority granted the trial court by the provisions of § 425, Title 15, Code 1940, which reads:

"Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by the written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime.

"Such defendant shall remain in the custody of the superintendent of the Alabama state hospitals and subject to the observation of and examination by such commission of lunacy for such length of time as may in the judgment of the commission of lunacy be necessary to determine his mental condition so far as it affects his criminal responsibility.

"As soon as such commission of lunacy has reached a conclusion, within the time and in the respect as hereinabove set forth, as to the mental condition of such defendant, it shall make a full written report thereof to the clerk of the court in which the indictment against said defendant is pending, which report shall be placed on file and be accessible to the court, to the solicitor and to the counsel for defendant.

"It shall be the duty of the clerk of said court upon receipt of said report to issue an order to the sheriff of the county directing that such defendant be remanded and removed to prison and that the criminal proceedings against him be resumed or he be otherwise legally discharged.

"The expense of removing such defendant to and from the hospitals and of maintaining him while there confined, shall be paid in the same manner as provided by law in the case of persons adjudged to be of unsound mind following inquisition in the probate court."

On February 20, 1964, the day set for the hearing on the motion to appoint the specialists in mental and nervous diseases, counsel for appellant sought to introduce a letter from the superintendent of a Wisconsin mental hospital which, although not admitted in evidence, is included in the record, having been marked for identification.

The letter shows the appellant's background and contains the following statement:

"Mr. Lokos entered the Winnepago State Hospital on July 25, 1953 under a mentally ill commitment signed by the Racine County Judge. He was conditionally released on October 24, 1953, was returned from conditional release on January 19, 1954. He took unauthorized absence on April 6, 1954, was returned April 11, 1954, again took unauthorized absence on August 12, 1954, was returned August 15, 1954, and was conditionally released on August 14, 1955. His conditional release expired one year later. His diagnosis on all his admissions was Schizophrenic Reaction, Paranoid Type."

■ While the letter would possibly not have been admissible on the trial on the merits, we think it could have been considered by the trial judge in arriving at a decision as to whether to invoke the provisions of § 425, Title 15, supra.

However, Lokos testified at the hearing and while he was unable to state the nature of his trouble, that is, the diagnosis made by the doctors of his mental condition, he did give evidence as to his several confinements in the Wisconsin mental institution and as to the nature of the treatment given him, which included electric shock treatment and insulin. The State called a Marengo County jailer and a Marengo County deputy sheriff, both of whom were in contact with the appellant while he was confined in the Marengo County jail. The State also called two State transfer agents, who observed the appellant as he was being transferred from one place of confinement to another. Each of those witnesses stated that in his opinion the defendant was sane. The State also called a Marengo County physician, a general practitioner, who talked with the appellant while he was confined in the Marengo County jail and who observed appellant while he was being questioned by the solicitor. Based on those contacts, he expressed the opinion that appellant was sane.

Following the hearing, the trial court overruled the motion for the court to appoint the specialists in mental and nervous diseases to examine the appellant.

The appellant's court-appointed attorney insists in this court that in overruling the motion the trial court erred to a reversal.

■ However we may have individually acted at nisi prius in view of the fact that the appellant had previously been confined in a mental institution and is a nonresident, who was not only without funds but without family or friends in this state to assist him in securing witnesses in support of his plea of insanity, we cannot under our previous decisions hold that the trial court's action in overruling the motion for the appointment of three experts in the field of mental disorders works a reversal of the judgment below. In Howard v. State, ante p. 361, 178 So.2d 520, decided on June 30, 1965, we said:

"* * * the court is under no duty to appoint a lunacy commission or to procure a report of the Superintendent of the Alabama State Hospital under Tit. 15, § 425, Code 1940. The court has simply the right to seek these aids for advisory purposes when the court, *in its discretion,* thinks such aids will be helpful. Campbell v. State, 257 Ala. 322, 58 So.2d 623; Oliver v. State, 232 Ala. 5, 166 So. 615." (Emphasis supplied)

See Aaron v. State, 271 Ala. 70, 122 So.2d 360.

In brief of counsel for appellant appears the following statement:

"The appellant, along with his three co-indictees, was brought into the courtroom handcuffed, with belts around their waists, a chain running through their respective belts, dressed in prison uniform. I call the attention of this Honorable Court to the fact that at the time, the entire jury venire from which I had to strike the jury, were present, were sitting in the courtroom,

and observed these prisoners in this condition; that they had not been permitted to shave since their arrests in December nor get a haircut, and that they looked like animals I immediately moved for a mistrial and stated my reason therefor, and the Court overruled my motion."

■ The record does show that the defendant was not permitted to have a razor while he was confined in the Marengo County jail awaiting trial. But there is nothing in the record to support the statement that he was unshaven at the time of the trial or to support any of the other assertions made in that part of the brief of appellant quoted above, nor does the record show a motion for mistrial because of such conditions. We are bound by the record and cannot consider statements in appellant's brief not supported by the record. Dannelley v. State, 130 Ala. 132, 30 So. 452; Walker v. State, 223 Ala. 294, 135 So. 438; Dockery v. State, 269 Ala. 564, 114 So.2d 394.

In Eaton v. State, Ala., 177 So.2d 444,[1] a companion case, Mr. Justice Harwood, writing for the court, summarized most of the facts bearing on the crime for which appellant, Eaton and two other young men were indicted, as follows:

"The evidence tends to show that the appellant and three companions drove into Sumter County, Alabama, from Texas. They were in a Ford automobile, and had heard police radio broadcasts for their apprehension. Shortly after entering Alabama from Mississippi, they saw a highway patrol car apparently following them.

"Speeding up and turning down a country road they eluded the patrol car, and eventually drove behind a country church where they spent the night. The next day, driving at random they stopped at a rural negro church. A well was near this church. They decided to 'put someone in the well' that night.

"After dark they drove to the home of Jack Stone. No one being there they burglarized the house, ransacking it thoroughly. The appellant testified they found some beer and whisky in the Stone home, and he had several cans of beer and about a half of a fifth of whisky.

"After dark the quartet then drove to the home of Mr. and Mrs. Leonard Culpepper. The Culpeppers being absent, they entered the home and were in the process of burglarizing this home when the Culpeppers returned.

"Mrs. Culpepper entered the house first. Upon observing the appellant and his companions with drawn guns she screamed. The appellant struck Mrs. Culpepper a severe blow on the head with a pistol, knocking her to the floor. As Mr. Culpepper entered the house he was covered by the guns in the hands of the four burglars.

"After tying up the Culpeppers and ransacking their home the quartet placed Mrs. Culpepper in the Ford automobile, and Mr. Culpepper was placed in his own automobile. With the appellant driving the Culpepper car, followed by the Ford, the quartet drove to the well in the churchyard. As they came to a stop at the well Mr. Culpepper was shot three times by either the appellant or by his companion Lokos.

"The well cover was removed and the Culpeppers, still bound, were thrown head first into the well. The cover was replaced, and the quartet drove off.

"Miraculously, Mrs. Culpepper survived this ordeal. The next morning her cries were heard by a passerby and help was summoned. Mrs. Culpepper was removed from the well, as was the body of Mr. Culpepper. Mrs. Culpepper has been largely confined to a hospital since, but was able to testify at the trial below.

1. Ante, p. ——.

"Upon their arrest in Texas, after apparently committing other crimes in that state, the quartet confessed to the Culpepper crime. These confessions were repeated upon their return to Alabama."

We reversed Eaton's judgment of conviction because of rulings of the trial court in connection with the Solicitor's argument, hence it was not necessary in the Eaton case to treat with the admissibility of the confessions introduced by the State or any other ruling of the trial court. The errors which brought about a reversal in the Eaton case are not present in this case, hence we must consider the question as to whether the confessions were properly admitted and other matters.

W. T. Jones, a Major in charge of the Division of Criminal Investigation of the State Department of Safety, participated in the investigation of the killing of Mr. Culpepper. He went to Texas after the appellant and his companions were apprehended in that state. He was a witness in this case, called by the State of Alabama. He was asked the following questions by the Solicitor and gave the following answers:

"Q. Major Jones, did you have a conversation with this defendant in this case, Dezso John Lokos?

A. Yes, I did.

Q. Where was that first conversation you had with him?

A. It was in the County Attorney's office in Cameron, Texas, at the Court House.

Q. Who all was present during that time?

A. Myself, Sheriff W. A. Bratton, Captain R. W. Godwin with the Department of Public Safety, Mr. John Henderson, the County Attorney of the County in which Cameron, Texas, is, and part of the time Sheriff C. C. Black of Cameron, Texas.

Q. Prior to the time that you had a conversation with him or during the time, did you or anyone in his presence or your presence threaten him in any manner, offer him any inducement or reward or any hope thereof to make a statement?

A. Did not.

Q. Did he make a statement there at that time in relation to this matter involving the death of Leonard H. Culpepper, the decedent in this case?

A. He did.

Q. What did he state?"

No ojection having been interposed by counsel for the appellant, the witness then proceeded to relate what appellant told witness and the others present concerning the part which he and his companions played in the brutal slaying of Mr. Culpepper. There is no need to set out here all that appellant told witness on that occasion. It is sufficient to say that he admitted that he shot the deceased and helped throw him in the well.

■■ It is well established by our cases that extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and unless it so appears it should not be admitted. Myhand v. State, 259 Ala. 415, 66 So.2d 544; Phillips v. State, 248 Ala. 510, 28 So.2d 542; White v. State, 260 Ala. 328, 70 So.2d 624; Hines v. State, 260 Ala. 668, 72 So.2d 296; Goldin v. State, 271 Ala. 678, 127 So.2d 375; Smitherman v. State, 264 Ala. 120, 85 So. 2d 427.

During the further examination of the witness Jones by the Solicitor the following occurred:

"Q. I'll ask you to look at this, which, in a previous case, was marked State's Exhibit P. I'll ask you if you have ever seen that before? It's a pistol

introduced in a case, for the sake of the record.

A. At the time he identified this pistol to me was not at the time I questioned him. It was some hour or two hours later in the Sheriff's office.

Q. All right, at that time, who all was present?

A. Sheriff Black, Captain R. W. Godwin, Sheriff W. A. Bratton, Mr. Jack Hopper with the Birmingham News, one or two Texas Rangers, and some other officials there but I don't recall the names.

Q. Prior to the time that you questioned him in relation to that pistol or anything else that took place in that particular conversation, did you or anyone in your presence or his presence threaten Lokos in any way, offer him any inducement or reward or any hope thereof to make a statement?

A. Did not.

Q. What did he say with relation to that pistol."

No objection having been interposed or any other ruling of the court having been invoked, the witness told what appellant said to him about the pistol and later on the witness related what appellant said to him about a rifle and a sack of old coins.

█ It is settled in this state that the accused may, before confessions are admitted in evidence, cross-examine a witness for the State as to their voluntary character and offer outside evidence on *voir dire* in contradiction of that produced by the State. Peoples v. State, 256 Ala. 612, 56 So.2d 665; White v. State, supra. It is the right of the accused to controvert evidence in laying such predicate by cross-examination, or by evidence *aliunde,* but such countervailing evidence impeaching the predicate to be successful must be offered on the *voir dire,* before the confession is admitted. Lockett v. State, 218 Ala. 40, 117 So. 457; Cook v. State, 16 Ala.App.

390, 78 So. 306; Pope v. State, 183 Ala. 61, 63 So. 71; Jackson v. State, 83 Ala. 76, 3 So. 847. If such countervailing evidence is not offered until after the preliminary question of the admissibility of the confession is passed on by the court, it goes to the jury on the credibility of the confession only. Lockett v. State, supra; Cook v. State, supra.

As we have shown, no objection was interposed to any of the questions propounded to the witness Jones by the Solicitor which we set out above. No request was made for *voir dire* examination of the witness. No request was made that counsel for defendant be permitted to cross-examine Jones or to offer any witness, the defendant or others, to contradict the testimony of Jones to the effect that the confession and admission of Lokos were voluntarily made.

█ Under these circumstances, we are of the opinion that reversible error is not made to appear in connection with Jones' testimony under the decisions of this court or those of the Supreme Court of the United States which had been announced at the time this case was tried.

█ On cross-examination Jones testified to the effect that appellant told him that on the preceding day he and a Ranger "had had some trouble" and appellant bit the Ranger. Jones also testified on cross-examination that Lokos did not tell him he had been beaten up, but did show Jones "some markings on him," but Jones didn't recall the nature of the markings. This testimony, coming after the confession and admissions had been admitted, was proper for the jury's consideration only as to the credibility of the confession and admissions. Lockett v. State, supra. The same is true of the testimony given by the appellant when he took the stand after the State had rested. On that occasion, after freely admitting his guilt, he related somewhat in detail his trouble with the Texas officers. Exactly when this encounter with the Texas officers occurred is not clear, but it seems to have been on some day previous to that

on which he made his statements in the presence of Jones. Appellant did not claim that he was mistreated in any way by anyone present when he made the statements testified to by Jones. Captain Godwin, who was present when those statements were made, was called as a witness by appellant and testified on cross-examination that appellant was not abused or threatened in any way in his presence.

■ Appellant did not claim that he was not in full possession of his mental faculties at the time the confessions and admissions were made. But if there was any testimony to that effect, it would not in and of itself render the confessions and admissions inadmissible. In Goldin v. State, 271 Ala. 678, 681, 127 So.2d 375, 378, we said:

" * * * The fact that an accused is not in full possession of his or her mental faculties when the confession is made does not render it inadmissible, but only affects the weight to be accorded by the jury; or is provable merely to support other evidence that the confession was not voluntary. To render such a confession inadmissible on that ground the mania must have been such that the accused was either an idiot or a lunatic during lunacy. Redwine v. State, 258 Ala. 196, 61 So. 2d 724."

We come now to a consideration of two cases of the Supreme Court of the United States decided since this case was tried, which most courts are treating as being retroactive.

On June 22, 1964, the Supreme Court of the United States decided the case of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and in reversing Escobedo's conviction said:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, *the suspect has requested and been denied an opportunity to consult with his lawyer,* and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335], at 342, 83 S.Ct. [792], at 795 [9 L.Ed.2d 799] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (Emphasis supplied.)

We took cognizance of Escobedo in Duncan v. State, 278 Ala. 145, 176 So.2d 840, decided on June 30, 1965, and discussed many of the decisions of state and federal courts which have considered it. We will not treat with those cases here other than to say that most of the courts consider Escobedo to be retroactive, but there is wide disagreement as to the interpretation to be placed upon it.

In Duncan v. State, supra, we followed those courts which have held that Escobedo is a controlling precedent only in those cases where the factors specified in Escobedo are present.

■ Here the predicate laid by the State did not show that a lawyer was present or that appellant was advised that he was entitled to a lawyer or advised that he did not have to make a statement or as to his constitutional rights. Unlike Escobedo, the record in this case does not show that at the time the confession was made appellant had a lawyer who was not permitted to be present.

■ We realize that the construction which we have placed on Escobedo is apparently not in accord with that placed on Escobedo by some of the federal courts and that in not following the holdings of those

courts we place our opinions and judgments in jeopardy of being voided by them in habeas corpus proceedings. But this is a state court of last resort, which is not bound by the decisions of any federal court other than the Supreme Court of the United States, and until that court says our construction and application of Escobedo are wrong, we will stand by them despite the likelihood of being, in effect, "reversed" by the lower federal courts. In so observing we do not intend any offense to any member of those courts. We simply differ with their views as we understand them.

Since our opinion in Duncan v. State, supra, was released several cases which deal with Escobedo have come to our attention. We list them for the benefit of the bench and bar without treating them individually. In re Lopez, Cal., 42 Cal.Rptr. 188, 398 P.2d 380 (January 29, 1965); State v. Kitashiro (Hawaii), 397 P.2d 558; State v. Hall, 88 Idaho 117, 397 P.2d 261; Hayden v. State (Ind.), 201 N.E.2d 329; Carson v. Commonwealth (Ky.), 382 S.W. 2d 85; Anderson v. State, 237 Md. 45, 205 A.2d 281; Swartz v. State, 237 Md. 263, 205 A.2d 803; Commonwealth v. McCarthy (Mass.), 200 N.E.2d 264; State v. Vigliano, 43 N.J. 44, 202 A.2d 657; State v. Johnson, 43 N.J. 572, 206 A.2d 737; Pece v. Cox, 74 N.M. 591, 396 P.2d 422; State v. Stinson, 263 N.C. 283, 139 S.E.2d 558; State v. McLeod, 1 Ohio St.2d 60, 203 N.E. 2d 349; Commonwealth v. Patrick, 416 Pa. 437, 206 A.2d 295; Campbell v. State (Tenn.), 384 S.W.2d 4; Ward v. Commonwealth, 205 Va. 564, 138 S.E.2d 293.

We do not think Escobedo requires a reversal of this case.

Another case decided by the Supreme Court of the United States on June 22, 1964, after this case was tried below, requires our attention, as it is generally said to be retroactive. It is Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. It is discussed at length in Duncan v. State, supra, where we said:

"We have given careful and deliberate consideration to this decision in the Jackson case, supra, and while we realize that the Court only knocked out the so-called New York rule and apparently gave approval to the Orthodox and Massachusetts rules, nevertheless we are clear to the opinion that the New York rule was avoided not only because in certain instances the question of voluntariness of the confessions was left for the jury's determination, but also because the evidence adduced relative to the voluntariness of the confession was taken before the jury."

We also said in Duncan that we had reached the "inevitable conclusion that the Supreme Court of the United States will not uphold a conviction where the question as to the voluntariness of the confession is presented in the presence of the jury if a request for a hearing outside the presence of the jury is made."

Here no such request was made. There was no conflict in the testimony as to the voluntariness of the confession prior to the time it was admitted. The appellant did not seek to testify as to the circumstances surrounding the taking of the confession prior to its admission or to offer any evidence tending to rebut that offered by the State. Our holding in Fikes v. State, 263 Ala. 89, 81 So.2d 303, cannot be said to have deterred appellant from asking to be permitted to testify prior to the admission of the confession as to the circumstances surrounding the taking of the confession, because he subsequently took the stand and freely testified to facts showing his guilt.

We hold that under the circumstances here presented Jackson v. Denno, supra, does not require a reversal of the judgment of the trial court here under review.

What we have said above in regard to the confessions and statements about which the witness Jones testified applies to the confessions and statements made by ap-

pellant after he was brought back to Alabama.

■ In the course of the trial the State introduced into evidence a number of articles, including pistols, rifles and a sack of coins, all of which tended to connect appellant with the commission of the crime. They were admitted without objection and no contention was made in the trial court that they came into the hands of the State as a result of an illegal search or seizure so as to render them inadmissible under the holding of the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, and no such contention is here made. We hold the exhibits were correctly admitted in evidence.

Mrs. Culpepper, the wife of the deceased, testified in the Eaton case. She did not testify in this case. The record contains the following entry:

"SOLICITOR: At this time, Your Honor, we would like, as per agreement with counsel, to keep Mrs. Culpepper from coming back up here, her testimony that she gave yesterday in the former case, applicable to this case, to be read by the Court Reporter.

COURT: All right.

(The Reporter than read the testimony given by Mrs. Earlyne Culpepper on February 26, 1964, in the trial of Case No. 6888, State of Alabama VS Gerald Eaton, Defendant, as follows:)"

The record discloses that all of the testimony given by the witness Mrs. Culpepper in the Eaton case, direct, cross and redirect, was read by the Court Reporter in the presence of the jury.

■ ■ In Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, decided by the Supreme Court of the United States on April 5, 1965, it was held that the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution in federal criminal trials is carried into state criminal cases by

the Fourteenth Amendment to the United States Constitution. And Section 6 of the Constitution of this state provides that in all criminal prosecutions the accused has a right "to be confronted by the witnesses against him." But we think that right can be waived and that the record in this case shows that it was waived. True, the record only shows a waiver by counsel for appellant rather than an express waiver by the appellant himself, but it certainly shows no protest on the part of appellant and it seems to us that the procedure followed was to the advantage of appellant, since the wife of the deceased, who was herself brutally mistreated by the defendant and his companions, was not before the jury. We have not overlooked the holding of the Supreme Court of the United States in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408. It is our view that the record before us presents a situation relative to the waiver entirely different from that contained in the Henry case.

As we have indicated above, the appellant took the stand and gave a full, detailed account of his part in the killing of Mr. Culpepper. His testimony shows that he and his companions committed as cold-blooded a murder as one can imagine.

■ As excuse for the crime, the burden was on the defendant to prove clearly to the reasonable satisfaction of the jury that he was so afflicted by disease of the brain when the offense was committed as to render him so insane that he did not know right from wrong with respect to the particular offense charged, or by reason of such mental disease he could not resist doing the wrong; and the crime must have been the product solely of such mentally diseased condition. Aaron v. State, 271 Ala. 70, 122 So.2d 360, and cases cited.

■ The issue, therefore, of insanity as excuse for the crime was for the determination of the jury. This issue was determined adversely to the defendant. We think the verdict was well founded. The

only evidence offered by appellant tending to support his plea of not guilty by reason of insanity was his own testimony tending to show that some years ago he had been committed to a mental hospital in Wisconsin, whereas the State, by a medical witness and by a number of nonexpert witnesses, presented evidence tending to show that appellant was sane at the time of the commission of the crime and at the time of trial.

Duly mindful of our duty in cases of this character, we have carefully examined the record for any reversible error, whether pressed upon our attention or not. We have here dealt with all questions calling for serious treatment. We find no reversible error in the record and the cause is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, MERRILL, COLEMAN and HARWOOD, JJ., concur.

