296 So.2d 206

**In re Claude David BALLEW**

**v.**

**STATE of Alabama.**

**Ex parte Claude David Ballew.**

**SC 480.**

Supreme Court of Alabama.

May 9, 1974.

Rehearing Denied June 6, 1974.

Ferris S. Ritchey, Birmingham, Robert
Eugene Smith, D. Freeman Hutton, Atlan-
ta, Ga., for petitioner.

**462**

William J. Baxley, Atty. Gen., George M. Van Tassel, Jr., Asst. Atty. Gen., and Francis A. Poggi, Jr., Sp. Asst. Atty. Gen., for the State.

**HARWOOD, Justice.**

The appellant operated an "Adults Only" book store in Mobile. As a result of a sale of a magazine entitled "Penelope, Issue No. 1" he was indicted for selling hard-core pornography. His trial resulted in a verdict of guilty, the jury imposing a fine of $500.00. The court imposed an additional punishment of hard labor for Mobile County for one year.

The Court of Criminal Appeals affirmed the judgment without an opinion. The appellant duly petitioned this court for a writ of certiorari, and we granted the writ.

The indictment against this defendant reads:

"The GRAND JURY of said County charge, that, before the finding of this indictment CLAUDE DAVIS BALLEW whose name is to the Grand Jury otherwise unknown than as stated, did knowingly and unlawfully sell to Don Smitherman, who was over 18 years of age, a magazine entitled 'Penelope, Issue No. 1' containing pictures and photographs of the female human body depicting the female genitals in such a manner as to be obscene or to represent hard-core pornography, after said Claude Davis Ballew had been notified in writing by an Assistant Attorney General of the State of Alabama, pursuant to Act Number 698, Acts of Alabama, Regular Session, 1969, that there was reasonable cause to believe that said magazine was obscene and hard-core pornography against the peace and dignity of the State of Alabama."

We do not consider it arguable but that the appellant was proceeded against under the provisions of Act No. 698, approved 10 September 1969. See 1969 Acts of Alabama, pps. 1253 through 1255. This Act now appears in the Recompiled Code of Alabama, 1958, Cumulative Pocket Part 1971, as Chapter 64C, Title 14, Sections 374(16j) through 374(16o), and for convenience will at times be so referred to hereinafter.

Section 374(16j) contains specific definitions of words used in the Act, such as "nudity," "sexual conduct," "sado-masochistic abuse," "hard-core pornography," "obscene," etc. "Obscene" is defined as a description or representation in any form of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it, (1) Predominately appeals to the prurient, shameful, or morbid interest, and (2) is patently offensive to prevailing or contemporary standards in the adult community as a whole with respect to what is suitable material, and (3) is utterly without redeeming social value or importance.

Section 374(16k) makes the sale or loan to a person eighteen years of age or over, of any picture, photograph, drawing, magazine, pamphlet, etc., of a person, or portion of the human body, which depicts nudity, sexual conduct, or sado-masochistic abuse and which is obscene or represents hard-core pornography.

Section 374(16m) reads:

"(a) No prosecution may be commenced against any person for violating sections 374(16k) and 374(16*l*) of this title unless the accused is first served with prior written notice that there is reasonable cause to believe the material upon which such prosecution is based violates this chapter, and the accused has, after receiving such notice violated this chapter.

"(b) The written notice provided for in paragraph (a) of this section 374(16m) may be given by only the following officials; the state attorney general and any assistant attorney general; the district attorney, county solicitor, their assistants and deputies, or any person whose office and duty is to prosecute criminal actions before any state, county or municipal court; the sheriff; the chief of police of any municipality or town; and the duly authorized law enforcement employees of the department of public safety.

"(c) Any person receiving such written notice provided for in paragraph (a) of this section 374 (16m) shall have the right within 30 days from such notice to file an appropriate action for declaratory judgment to determine the validity of such written notice, but no such action shall, by reason of the commencement thereof, stay or in any way delay or postpone any prosecution for the violation of this chapter. (1969 p. 1254, § 4, appvd. Sept. 10, 1969.)"

Section 374(16*o*) provides that the provisions of Chapter 64c are cumulative of, and in addition to, all laws dealing with obscene or hard-core pornography, and shall not be construed to repeal other laws on such matters.

In the trial below the State introduced in evidence the magazine entitled "Penelope, Issue No. 1." Additional evidence introduced by the State showed that the Mobile Book Mart is located on Conception Street in Mobile, Alabama. The front of the store had a sign reading "Adult Book Store" followed by the legend, "No one under twenty-one years of age admitted." The front window glasses were rendered opaque by being painted over. The Mobile Book Mart is operated by Clarence Cantey. On 13 May 1970, the premises were visited by Robert E. Morrow, an Assistant Attorney General. On display for sale was the magazine "Penelope, Issue No. 1," along with other magazines. After inspecting the magazines Mr. Morrow served a written notice on the appellant to the effect that he had reasonable cause to believe that certain magazines on display, including "Penelope, Issue No. 1" were obscene, and that continuing to offer the materials for sale constituted a violation of Act 698. The next day, Donald T. Smitherman, a 29 year old member of the Vice and Narcotics Squad of the Mobile Police Department, entered the store and purchased a copy of "Penelope, Issue No. 1" from the appellant who was in charge of the store as manager.

The defense offered only one witness, Dr. Robert M. Dowd. Dr. Dowd, who at the time of the trial was currently on leave from the Department of Psychiatry of Tulane University Medical School. He was spending his leave as Assistant Professor of Family Health and Population Dynamics, studying psychiatric aspects of family planning. Dr. Dowd testified as an expert on the question of whether "Penelope, Issue No. 1" appealed predominately to a prurient interest in sex or nudity, and whether the magazine had any redeeming social value.

Dr. Dowd testified that in his opinion the magazine did not appeal predominately

to a prurient sex interest in that it pictures "just female nudes," and is not sick or morbid.

He further testified that the magazine had redeeming social value in that it would tend to satisfy male curiosity as to female form, and in that aspect might be educational.

He further testified that in his opinion the magazine might be educational to adult females in that some females are curious about their bodies in comparison with the bodies of other females, and in this sense might also be therapeutic.

As stated above, the magazine "Penelope, Issue No. 1" was received in evidence. It was therefore before the court and jury at the trial level, it was before the Court of Criminal Appeals, and is now before us. From the outside of the front cover to the back of the back cover, the magazine consists of nude females in poses contrived to depict their genitals and breasts. The weight to be accorded Dr. Dowd's testimony was within the province of the jury, as was the weight to be accorded all of the evidence. From the verdict rendered, it must be inferred that the jury attached little or no weight to Dr. Dowd's testimony. The trial judge by his entry of the judgment pursuant to the verdict, and the Court of Criminal Appeals by its affirmance of the judgment, apparently found no reason to question the conclusions of the jury in this aspect. From our examination of "Penelope, Issue No. 1," we too are in hearty accord with the correctness of the jury verdict in this aspect.

■ We hold that Act 698, in all parts other than Section 374(16m) (Notice to be given) is clear and unambiguous. It sufficiently defines what is pornographic as to fully warn anyone of what is prohibited activity.

In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, are new standards for guidance as to what constitutes obscenity as a matter of law. They are,

(a) whether the "average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. The standard set forth in Memoirs v. Massachusetts, 383 U.S. 413 at 419, 86 S.Ct. 975, 16 L.Ed.2d 1, that the work be utterly without redeeming social value was repudiated, and superceded by (c) above. The court further held that patently lewd exhibition or representation of the genitals was a proper subject for regulation in an obscenity statute.

In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, the court held that the states have a legitimate interest in regulating commerce in obscene material in places of public accommodation, even though minors be excluded therefrom, and further, that it was not error " * * * to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence * * *"

We come now to a consideration of whether Act No. 698 (Sections 374(16j) through 374(16o), is unconstitutional in toto because of the unconstitutionality of Section (16m), particularly in view of the recent decision rendered 5 January 1974 by a three judge Federal District Court for the Middle District of Alabama, Northern Division, in United Artists Corporation, a Corp. v. E. L. Wright, Jr., individually and as Chief of Police, City of Montgomery, Alabama, Civil Action No. 4208–N, 368 F. Supp. 1034.

In said case E. L. Wright, Jr., as Chief of Police of Montgomery, Alabama, without any prior administrative or judicial proceeding, before a neutral party, served a written notice on an exhibitor in Montgomery, who proposed to show in his thea-

ter a moving picture entitled "Last Tango in Paris," stating that there was reasonable cause to believe that the exhibition of that film would constitute a violation of the Alabama laws regulating to obscenity.

The written notice advised the exhibitor that he could seek a declaratory judgment in the circuit court as to the obscenity vel non of the film, and further advised the exhibitor that "the exhibition of this film prior to obtaining the declaratory judgment might result in prosecution."

United Artists Corporation, the owner and distributor of the film, upon the exhibitor's declining to show the film after receipt of the notice, brought an action in which it alleged the unconstitutionality of Act No. 698 (Sections 374(16j)–374(16*o*)) on its face, and as applied.

The three judge district court held that Section 374(16m) providing for notice was unconstitutional, and further that this section was inseparable from the remaining portions of the Act, and the Act should be considered as an indivisible whole, particularly since the Act failed to contain a separability clause.

The basis of the court's decision that Section 374(16m) (notice provision) was unconstitutional was that it, (a) constituted in effect a prior restraint, in that a threatened prosecution by a law enforcement officer "can constitute an all too effective prior restraint," (b) the notice section calls only for reasonable cause to believe the material is obscene on the part of the law enforcement officials, and thereafter the person receiving the warning must bring the declaratory action and carry the burden of proof, (c) the warning is for all intents and purposes a "final" act of censorship in that it would ordinarily effectively stop the showing of a film (or sale of questioned literature), and (d) there is in the section no provision for expediting judicial consideration, either at trial or on appeal, of the issue of obscenity, and therefore a final adjudication is subject to all

of the delays incident to processing an ordinary civil action.

We are in accord with the conclusion reached that Section 374(16m) is unconstitutional.

We are not in accord with the conclusion of the court that Section 374(16m) is inseparable from the remaining portion of the Act, and therefore the entire Act is unconstitutional.

The decisions of federal courts other than the Supreme Court of the United States are not binding upon a state court of last resort. Lokos v. State, 278 Ala. 586, 179 So.2d 714; Liddell v. State, 287 Ala. 299, 251 So.2d 601.

In its opinion, the three judge court wrote:

"Under Alabama law, the absence of a separability clause means that the statute is to be considered as an indivisible whole. San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 406, 217 So.2d 803(1969)."

We consider this statement too general and too broad and a misconception of the doctrines of our cases on the subject. It is true that in *San Ann Tobacco Co.*, supra, this court wrote on rehearing as follows:

"We recognize that a separability clause should be given effect, where possible, to save a legislative enactment. Allen v. Walker County, 281 Ala. 156, 199 So.2d 854; Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810. (We called it a severability clause in Hall v. Underwood, 258 Ala. 392, 63 So.2d 683 [16].)

"Here, the absence of such a clause in Act No. 78, in connection with the fact that the part of the Act discussed in the original opinion was clearly of doubtful constitutionality, and as we stated—'it is difficult to understand why the five words were added by amendment to § 3 of the Act,' *give evidentiary strength to*

our conclusion that the Legislature intended for all the amendments in Act No. 78 to stand or fall together, and thus Act No. 78 has been stricken in its entirety." (Emphasis supplied.)

█ In other words, the absence of separability clause *gave evidentiary strength* to the conclusion arrived at in the original opinion that the legislature intended the amendments provided by Act No. 78 to stand or fall together, but was not conclusive thereof.

The rule of our cases is stated in Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74, as follows:

"Another guiding principle of paramount importance is that courts seek to sustain, and not strike down, the enactments of a coordinate department of government. Every legislative act is presumed to be constitutional and every intendment is in favor of its validity. Tucker v. State, 231 Ala. 350, 165 So. 249; Gray v. Johnson, supra [235 Ala. 405, 179 So. 221]. Although a statute may be invalid or unconstitutional in part, the part that is valid will be sustained where it can be separated from that part which is void. State ex rel. Farmer v. Haas, 239 Ala. 16, 194 So. 395. If after the deletion of the invalid part, the remaining portions of an Act are complete within themselves, sensible, and capable of execution, the Act will stand notwithstanding its partial invalidity. Springer v. State ex rel. Williams, 229 Ala. 339, 157 So. 219.

"Certainly the existence of a separability clause in the Act itself cannot but strengthen this principle."

In State ex rel. Crumpton v. Montgomery, 177 Ala. 212 at 241, 59 So. 294, at 303, this court observed that the presence of a separability clause "serves only to render certain the legislative intent with respect *to passage* of the valid parts * * *" See also A. Bertolla & Sons v. State, 247 Ala. 269, 24 So.2d 23.

Here, the dominant purpose of Act 698 is to proscribe the sale or loaning for a monetary consideration to a person eighteen years of age or older of obscene, hard-core pornography. Apparently, the legislature sought by Section 374(16m) to give to a purveyor of obscene materials a warning, and even an opportunity to resolve the question of whether the material was obscene in a civil suit. In making this benign gesture, the legislature was mistaken in the constitutional aspects of its action.

However, without Section 374(16m), the remaining portions of Act 698 constitute an Act complete within itself, sensible, and capable of execution. We hold, therefore, that such remaining portions are not rendered invalid because of the invalidity of Section 374(16m).

The grounds asserted as error in support of the petition for certiorari are, (a) "that the provisions of Title 14, Section 374 as written and applied in the context of the case at bar [are] repugnant to Petitioner's rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States;" Ground (b) asserts that the rulings and treatment of some sixty-eight obscenity cases by the United States Supreme Court involving matters of "constitutional dimensions" as to both substance and procedure operate prospectively as to new and possible violations of Title 14, Section 374, and the newly announced standards to be employed; Ground (c) is similar to Ground (b) in that it asserts that the decisional standards announced in Miller v. California, supra, cannot be applied retrospectively to pending convictions not yet final as is the case at bar, "and accordingly the statute as applied is void as ex post facto legislation under Sections 1 and 9 of the United States Constitution."

What we have written we think disposes of ground (a) of the petition for certiorari.

Grounds (b) and (c) we think are disposed of by the holding in Frank v. Man-

gum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969, to the effect that Sections 9 and 10 of the United States Constitution are directed to "legislative enactments" rather than judicial decisions.

Upon full consideration of the grounds asserted as error in support of the petition for the writ of certiorari, it is our conclusion that the Court of Criminal Appeals did not err in its memorandum judgment affirming the judgment here involved. Accordingly, the judgment of the Court of Criminal Appeals is due to be affirmed.

Affirmed.

MERRILL, COLEMAN, BLOODWORTH, McCALL and FAULKNER, JJ., concur.

HEFLIN, C. J., and MADDOX, J., concur specially.

JONES, J., dissents.

HEFLIN, Chief Justice (concurring):

I concur in the result reached by the majority opinion in this case, and I am in basic agreement as to the rationale employed. There are some points, however, which, I feel, need to be clarified.

First, I think that there is no doubt that the statute involved, Title 14, Sections 374(16j)–374(16o), Alabama Code of 1940, as amended (Recompiled 1958) (Supp. 1971), meets the constitutional requirements of specificity established by the Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). This statute compares favorably with the statutes from Oregon and Hawaii which the Supreme Court in *Miller* suggested would pass constitutional muster.

Second, while I do not agree with the generalized treatment given the issue of retrospectivity by the majority opinion, I don't think there is any problem of retrospective application of *Miller* standards in this case. The statute as written is as specific as *Miller* requires and was when petitioner was indicted and convicted. Furthermore, the jury applied the old "utterly" standard and not the current "serious" standard of *Miller*. An independent examination of the evidence demonstrates that the jury's determination that the matter was utterly without redeeming social value was correct. If a defendant has had the benefit of the "utterly" test, then it is inescapable that he has had benefit of the "serious" test, because any matter which is utterly without value could have no serious value. See Pierce v. State, 292 Ala. 473, 296 So.2d 218 (1974).

I feel, however, that under some circumstances ex post facto considerations are applicable to judicial decisions, especially where judicial engraftments favorable to the prosecution are added to a statute. Since there is a difference of opinion on the issue of retrospective application of *Miller* to conduct which occurred prior to *Miller's* issuance, not only among members of this court but among courts around the country, see Chobot v. Circuit Court for Milwaukee County, 61 Wis.2d 354, 212 N.W.2d 690 (1973) (limiting construction may be applied to punish conduct occurring prior to the construction); State v. Welke, Minn., 216 N.W.2d 641 (1974) (construction in case at bar does not afford requisite notice with respect to sale four years ago). I feel constrained to elaborate upon my views of this issue.

The difficulty arises, in my view, because of two factors: (1) The Supreme Court limits the scope of state regulation of obscenity to "sexual conduct specifically described" but apparently invites courts to cure defects in statutes by judicial construction, and (2) the court eliminates the "utterly without redeeming social value" test which was very difficult to meet, and replaces it with the "[without] serious literary, artistic, political, or scientific value" test which is a standard less difficult for the prosecution to meet. These two developments must be considered independently

if a clear understanding of the potential ex post facto problems of *Miller* is to be had.

Assume first that *Miller* had been issued without any mention of judicial construction supplying the required specificity. As of June 21, 1973, the constitutional rule would be that for a statute to be valid (and a prosecution under it to be upheld) the statute would have to have defined obscenity in terms of sexual conduct specifically described. From that day forth any court reviewing an obscenity conviction would begin by examining the statute under which the defendant was tried. If the statute as written was specific at the time the alleged violation occurred then the conviction could be affirmed, but if not, it could not be. There is no question of retrospective application—the statute either was specific or it was not, and the decision would turn on that point.

In *Miller,* however, the court went a step further. The decision indicates that the statute as written or construed must be limited as mentioned. If, prior to *Miller,* the statute had been construed to be limited to "sexual conduct" and that conduct specifically described in the opinions so construing the statute, then the defect of vagueness would have been cured by prior judicial construction and the defendant could not complain that he did not have notice of the activity proscribed. In such instance a defendant's conviction under the previously judicially construed statute would be valid. Pierce v. State, supra (statute limited by previous construction); United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973) (Title 18 U.S.C.A., § 1462 (1970) "has been the subject of much explication in Supreme Court opinions," thus the court sustained convictions on this issue); Rhodes v. State, 283 So.2d 351 (Fla.1973) (conviction upheld because cases since 1969 and before *Miller* had construed obscenity statute).

But what if there had been no prior construction of the statute, and as written, it was not specific as *Miller* required?

Clearly, the statute would fail to pass the vagueness muster and the conviction would have to be reversed. State v. Welke, supra.

But the court in *Miller* indicated that the judicial construction could be supplied subsequent to the issuance of *Miller* itself. Does this mean that in deciding pending cases, a court can affirm a conviction by construing the statute in the very case before it as being specific enough to meet the *Miller* requirement? How can it be said that the defendant had noticed that his actions were criminal when the alleged crime was committed if the court only clarifies what the statute means now—a year or two after the allegedly criminal acts.

In construing a statute the court is essentially performing a legislative act. This is especially true in instances where the court is curing some constitutional defect by construction. See Art Theater Guild, Inc. v. State, Tenn., 14 Crim.L.Rptr. 2497 (Tenn. Feb. 19, 1974) ("The function of this Court is to interpret a statute . . . and [it] cannot usurp the prerogatives of the legislature by supplying essential elements to a statute which have been omitted . . . ."). Thus, even though as a general rule ex post facto principles may not apply to court decisions, clearly in a case like that described above, ex post facto principles should be considered. *See* United States v. Lang, 361 F.Supp. 380 (C.D. Cal.1973) (Application of *Miller* standards in pending case is "the functional equivalent of an ex post facto application of the law.") In a case where there is no prior authoritative construction, the courts' adoption of a *Miller* type construction can only operate prospectively. That is, from the date the court adopts a specific construction properly limiting the statute, all potential wrongdoers will have notice as to what activity is outside the scope of the statute. The statute will be, by construction as of the date of the opinion, as specific as *Miller* requires. But to attempt to have the construction relate back one or two years or more in order to affirm pending cases

would clearly operate as a denial of due process.

In Papp v. State, 281 So.2d 600 (Fla. App.1973), the Florida District Court of Appeals, Fourth District had this precise issue before it. That court stated:

"The [Florida obscenity] statute is susceptible of judicial construction by which its scope may be limited to 'obscene material' as defined in Miller v. California, supra. It is our view, however, that for this court to so construe the statute and at the same time apply it to Mr. Papp's conduct which was brought into question in the courts of this state before the statute had been thus limited by judicial construction, would amount to a denial to Papp of due process of law, because at the time of his alleged offense [1969] neither the statute nor judicial construction thereof gave adequate notice of the conduct sought to be proscribed."

See also Stroud v. State, Ind., 300 N.E.2d 100 (1973).

The second aspect of the *Miller* case mentioned above which tends to cause confusion as far as ex post principles are concerned is the new social value norm. The *Miller* decision lightens the burden the state must carry in proving the matter before the court is obscene since it is no longer necessary to meet the "utterly without social value" test but instead the state need only prove the matter has no "serious literary, artistic, etc., value." Hence, in the future prosecutors should have a less burdensome burden of proof in this connection.

In pending cases, however, there should be little doubt but that the heavier burden must have been carried at trial. In United States v. Thevis, supra, the defendants had been convicted under 18 U.S.C. §§ 6, 1462 (1970) for transporting obscene matter by common carriers in interstate commerce. The trial court had found the material to be obscene under the three-pronged

*Roth-Memoirs* formulation. While the appeal to the Fifth Circuit was pending the *Miller* decision was issued. The appellant in *Thevis* argued that the *Miller* tests replaced the *Roth-Memoirs* tests but that the *Miller* tests could not be given a retroactive effect. The court stated that out of an abundance of caution it would apply both the *Roth-Memoirs* and the *Miller* tests "with the appellants . . . to receive the benefit of the most favorable standard." The effect of such application was that the Fifth Circuit did not apply the *Miller* test of social value retroactively since the *Roth-Memoirs* standard was more favorable to the defendant.

The Supreme Court of Florida handled this matter with the following language:

"On the matter of standards of obscenity, the U.S. Supreme Court has now afforded a sensible test and guidelines in Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419 (1973), and Paris Adult Theatre I v. Slaton, 413 U. S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), decided on June 21, 1973. The new test will no doubt prove more effective in future infractions of § 847.011 and of the new Fla.Stat. Ch. 73–120. We cannot, in our view, however, by reason of ex post facto principles apply new standards in the now-judicially-approved 'new test' of obscenity to earlier offenses in determining the sufficiency of the statutory language to warn the average person of common intelligence as to what constitutes the prohibited offense. This is particularly true of '(c)' of the test in *Miller* as to 'literary, etc. value'. It may or may not be true of (a) and (b) in view of our statutory language and its construction as it may have been published as notice to an offender on the date of the offense in question.

"Sub judice the test set forth in these latest U.S. judicial holdings with respect to 'c' ('literary value') as to what now constitutes obscenity was not available

on May 5, 1971, as amplification of the notice to appellant of the proscribed conduct; such a modification of the old test in the new holdings cannot now be echoed to the date of the earlier offense. The 'old test' (Memoirs v. Mass., 383 U. S. 413, 419, 86 S.Ct. 975, 978, 16 L.Ed.2d 1 (1966) ) that the allegedly obscene matter be 'utterly without redeeming social value', must apply in such instance, for such was the test upon which defendant was on notice of the date (May 5, 1971) of the alleged violation." Rhodes v. State, supra.

The Florida Court went on to hold that the "utterly" test had been properly applied below, and furthermore, that judicial construction of the Florida obscenity statute since 1969 but before *Miller* supplied any needed particularity in the statute.

Another clear expression of the principles involved in applying *Miller* is found in United States v. Lang, supra:

"The newly formulated *Miller* test eases the prosecution's burden, and enhances the likelihood of successful prosecution. The new test simply requires that the prosecution show, inter alia, that 'the work, taken as a whole, lacks *serious* literary, artistic, political, or scientific value.' *Miller*, supra, 413 U.S. at 24, 93 S.Ct. at 2615 (emphasis added). In short, the Court's new test substantially changes the law of obscenity, and as a general proposition now makes it easier to convict the defendants. Therefore, to prosecute defendants under the judicially devised *Miller* definition of obscenity and to instruct the jury on it would, without fig leaves, be the functional equivalent of an ex post facto application of the law. This the due process clause forbids. Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L. Ed.2d 894 (1964). Moreover, to apply retroactively the judicial construction now placed on § 1461 would further deprive defendants of due process by having denied them fair warning that their

acts, when committed, constituted a crime."

In summary, it seems clear that, for pending prosecutions, *Miller* requires this court to examine the statute and prior cases under it to determine whether the defendant was given proper notice of what constituted the crime. Moreover, it is abundantly clear that the only social value norm which can constitutionally be applied in cases pending at the time *Miller* was issued is the more stringent "utterly" test. Thus the courts must examine convictions obtained prior to *Miller* in light of these potential ex post facto problems.

Since the statute here applicable meets the *Miller* requirements of specificity and since the defendant was given the benefit of the "utterly" test at trial and upon review before this court there is no reversible error in the record on these issues.

MADDOX, Justice (concurring specially).

I concur wholeheartedly in the opinion with the exception of that part which holds Section 4 of Act 698, Acts, 1969 [Title 14, Section 374(16m)] is unconstitutional. Section 4 of Act 698 provides:

"(a) No prosecution may be commenced against any person for violating Sections 2 and 3 of this Act unless the accused is first served with prior written notice that there is reasonable cause to believe the material upon which such prosecution is based violates this Act, and the accused has, after receiving such notice violated this Act.

"(b) The written notice provided for in paragraph (a) of this Section 4 may be given by only the following officials: the State Attorney General and any Assistant Attorney General; the district attorney, county solicitor, their assistants and deputies, or any person whose office and duty is to prosecute criminal actions before any state, county or municipal court; the sheriff; the chief of police

of any municipality or town; and the duly authorized law enforcement employees of the Department of Public Safety.

"(c) Any person receiving such written notice provided for in paragraph (a) of this Section 4 shall have the right within 30 days from such notice to file an appropriate action for declaratory judgment to determine the validity of such written notice, but no such action shall, by reason of the commencement thereof, stay or in any way delay or postpone any prosecution for the violation of this Act."

I realize that a three-judge District Court has held that not only Section 4, but Act 698, in its entirety, is unconstitutional, but as Justice Harwood points out, that decision is not binding upon us. In fact, Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), reaffirmed the principle that it is the function of the states to regulate obscenity and that this is " . . . a power reserved to them under the Constitution, a power which they have . . . exercised continuously from before the adoption of the First Amendment to this day."

Under the guidance of Miller, I believe the Federal District Court is incorrect about Section 4 (the notice provision). The authority which the Federal District Court cites is all pre-Miller. In Miller, the majority of the Supreme Court of the United States pointed out:

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depicit or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. *We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution.* See Roth v. United States, supra, 354 U.S. 476, at 491–492, 77 S.Ct.

1304, at 1312–1313, 1 L.Ed.2d 1498 (1957). Cf. Ginsberg v. New York, supra, 390 U.S. 629, at 643, 88 S.Ct. 1274, at 1282, 20 L.Ed.2d 195 (1969)." [Emphasis added.]

As I read this admonition in Miller, a majority of the Supreme Court seems to think a notice to peddlers of obscenity that they *could suffer prosecution* is not constitutionally impermissible.

As a matter of fact, in Gable v. Jenkins, 309 F.Supp. 998 (N.D.Ga.1970), aff'd per curiam, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970), Georgia Code, § 26–2101, which is similar to Act 698 in its definition of obscene material, was upheld as being constitutional by the Supreme Court of the United States. While the Court there held that a prior adversary hearing is constitutionally necessary before *seizure* of obscene material can be made, the Court nevertheless suggested a procedure which could be followed, which procedure closely follows the "notice" provision of Act 698. The Court pointed out (309 F.Supp. at page 1001):

"However, as to the necessity of the prior adversary hearing, this goes merely to the competency of the evidence in an obscenity prosecution and would not bar a prosecution based on other legally obtained evidence. Matter seized illegally, i. e., without a hearing, must be returned. In Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the evil was that the hearing as to the obscene nature of the material was held after seizure; thereby, the Supreme Court concluded that the procedure employed was unconstitutional. There is proper procedure existing in the Georgia law that can achieve constitutional standards, i. e., a prior adversary judicial proceeding before the seizure of the allegedly obscene items.[3] Accordingly, Georgia Code 26–

3. As examples, the following are presented: When a search warrant is applied for to seize the alleged obscene materials, the person possessing the same

could be given notice of the intent to apply for the search warrant, and be given an opportunity to be present at such time, and present evidence in opposition to the issuance of the search warrant. Or an order to show cause why the alleged obscene film is not obscene could be served on the possessor, or a petition to have the film declared contraband, and subject to destruction could be served on the possessor."

2101 is not unconstitutional in that it does not establish a prior judicial hearing within itself.

The obscene material in this case was purchased *after* the seller had been warned that the material was considered obscene. It was not seized under a warrant or incident to an arrest.

From a policy standpoint, the notice provision of Act 698 puts an additional requirement on the prosecution—to give *written notice* to a seller advising him that his material is considered obscene. This notice is required *before* a prosecution can be commenced.

Most violators of the law are not favored with a warning before a prosecution can be commenced. Since I do not believe that a prior judicial determination that material is obscene must be held before a prosecution can be commenced, I cannot agree with the majority on this point.

I think the majority here and the Federal District Court have both misinterpreted the purpose of the notice provision. I believe the legislative purpose was probably designed to notify book dealers that a book or magazine he was selling was obscene. He could not be prosecuted until he was *notified*. Many citizens might object to the state policy which requires that a seller of obscene material should be forewarned, but the Legislature has decided differently. Under *Miller,* the regulation of obscenity, within the guidelines there announced, is one for the individual state legislatures or state judges interpreting state law. At least, that is what I think *Miller* says.

I believe these notice provisions are beneficial to a potential defendant in an obscenity case. In Hawkins v. State, 124 Ga.App. 53, 183 S.E.2d 239 (1971), the defendant considered the *notice provisions* to be beneficial. Hawkins was being prosecuted for violating one of Georgia's obscenity statutes. He claimed that the "notice" provision of the subsequent law (which dealt only with minors, but which contained a notice provision like Section 4 of Act 698) required that he be notified in writing before the prosecution could be commenced. The court did not rule in Hawkins' favor, but it seems obvious that to require that the prosecutor notify a potential defendant that what he is doing is considered illegal *before* the state can prosecute is beneficial to the defendant.

There is another reason why I think the notice provision is not unconstitutional. The fact that a crime is "knowingly" committed is always an important consideration. It is conceivable that a dealer might not be aware of each and every thing which is contained in the books or magazines he sells. I think that is the reason the Legislature put the notice provision in the statute. *Miller* sets up the latest guidelines for prosecution of obscenity cases. I do not believe that the State must establish in an adversary hearing the obscenity vel non of every film, book, magazine, or other material *before* a prosecution can be commenced. Consequently, I disagree that Section 4 is unconstitutional.

JONES, Justice (dissenting).

My views have been expressed in McKinney v. City of Birmingham, 292 Ala. 726, 296 So.2d 236 (1974), released simultaneously with this opinion, and I respectfully dissent on the same grounds.